REBECCA M. FRIDAY, Plaintiff v. UNITED DOMINION REALTY TRUST, INC., t/a AND d/b/a NORTHWINDS APARTMENTS, Defendant

No. COA02-283

(Filed 21 January 2003)

## 1. Landlord and Tenant— apartment rental—late fee—administrative fee

Although the trial court did not err by finding defendant apartment complex violated N.C.G.S. § 42-46 by charging plaintiff tenant a late fee in excess of five percent of the rental cost, the trial court erred by concluding defendant's $75.00 administrative fee charged if legal papers are filed against the tenant was a violation of the statute, because: (1) even though defendant only charged and plaintiff only paid a $30.00 late fee each time her rent was late, the $31.00 late fee provision of the lease agreement is contrary to the provisions of N.C.G.S. § 42-46(a) by charging a fee in excess of five percent of the rental cost and is therefore void and unenforceable as against public policy; and (2) a lease providing for a fee such as the $75.00 administrative fee reasonably related to an additional expense incurred and not solely relating to rent being late does not violate N.C.G.S. § 42-46.

## 2. Landlord and Tenant— apartment rental—debt collection—unfair trade practices—attorney fees

Although the trial court did not err by finding that certain actions of defendant apartment complex violated the Unfair and Deceptive Trade Practices Act and the North Carolina Debt Collection Act under N.C.G.S. § 75-54(4), N.C.G.S. § 75-54(6), and N.C.G.S. § 75-55 when it was acting as a debt collector to recover past due rent and related charges against plaintiff tenant, the trial court erred by concluding that the $45.00 defendant sought to recover for the filing of a summary ejectment action was a violation of N.C.G.S. § 75-54(4) and N.C.G.S. § 75-54(6) even though defendant stated in a letter dated 23 March 2000 to plaintiff that the $45.00 was for attorney fees, because the $45.00 is a court cost to be imposed by the trial court and not a debt under N.C.G.S. § 75-50.

## 3. Landlord and Tenant— apartment rental—unfair and deceptive trade practices—damages

The trial court erred by finding that defendant apartment complex's actions of sending notices to plaintiff tenant regarding

past due rent and allegedly telling tenant's prospective landlord that the tenant still owed it money constituted an unfair and deceptive trade practice; by awarding plaintiff damages for injury to reputation, mental suffering, humiliation, inconvenience, and embarrassment; and by awarding plaintiff damages based on the fact that she had to live with her sister.

### 4. Costs— attorney fees—new findings and conclusions required

The trial court's award of attorney fees in the amount of .$9,000 to plaintiff tenant in an action alleging unfair and deceptive trade practices, a violation of the North Carolina Debt Collection Act, abuse of process, and slander is remanded to the trial court to make new findings and conclusions consistent with the Court of Appeals' opinion.

Appeal by defendant from judgment entered 20 November 2001 by Judge Melzer A. Morgan, Jr. in Guilford County Superior Court. Heard in the Court of Appeals 31 October 2002.

*Johnson, Younce, Moore & Moseley, L.L.P., by J. Sam Johnson, Jr., for plaintiff-appellee.*

*Smith Moore, LLP, by Stephen P. Millikin and Lisa M. Kaminski, for defendant-appellant.*

CAMPBELL, Judge.

Northwinds Apartments ("Northwinds") appeals from an order awarding plaintiff, Rebecca Friday, ("Ms. Friday" or "tenant") treble damages and attorney's fees after a bench trial held 8 October 2001. On appeal, Northwinds contends that the trial court erred in five ways: I. By finding that Northwinds violated N.C. Gen. Stat. § 42-46; II. By finding that Northwinds violated the Unfair and Deceptive Trade Practices Act ("UDTPA"); III. By finding that Northwinds violated the North Carolina Debt Collection Act ("NCDCA"); IV. In its findings of fact relating to: the notices tenant received; tenant's appearance at the May 25 2000 magistrate hearing; Northwinds' communications with Wind Lake Apartments; damages assessed for injury to reputation, mental suffering, humiliation, inconvenience and embarrassment; and damages assessed for tenant living with her sister; and V. By awarding plaintiff attorney's fees. We vacate the trial court's judgment and remand to the trial court for an assessment and award of damages consistent with this opinion.

## Background Information

Ms. Friday began renting from Northwinds in August 1998. She signed a rental agreement that had the following terms: the rent is due on the first of each month; a $31 late charge will be applied if the rent is paid after the 5th day of the month; reasonable costs of collection will be charged to the tenant; no personal check will be accepted for late payments; an administrative fee of $75 will be added to court costs if legal papers are filed against tenant.

Ms. Friday experienced no problems for the first year that she resided at Northwinds from August 1998 through August 1999. In September 1999, she moved into a larger apartment, which increased her monthly rent to $610. In late 1999, Northwinds increased its $75 administrative fee to $100 for new tenants. Since Ms. Friday had lived there for one year, this increase did not apply to her. In February 2000, however, a rental agent mistakenly applied this increase to Ms. Friday's lease. This then caused a $100 fee to be charged to Ms. Friday's account when Northwinds initiated ejectment actions against her in March 2000, May 2000, and July 2000.

Ms. Friday's rent was late multiple times between December 1999 and July 2000. She would eventually pay the rent and all the $30 late charges and administrative fees that applied. Although the lease stated that a $31 late fee would apply, Northwinds only charged Ms. Friday $30 each time, except for once in May 2000 when a magistrate judge entered a money judgment including a $31 late fee.

On 6 June 2000, a $30 late fee was charged to Ms. Friday. On 16 June 2000, a $1,425 payment was received by Northwinds from White Oak Missionary Baptist Church, causing Ms. Friday's account balance to be $0. She made no rent payment for July. On 13 July 2000, Northwinds filed a complaint against tenant for summary ejectment, including rent due. On 31 July 2000, judgment for possession and $45 in court costs was entered on behalf of Northwinds.

Between December 1999 and July 2000, Northwinds had sent a number of notices regarding overdue rent and other charges. Northwinds obtained three summary ejectment judgments against tenant, two for possession, which Northwinds did not enforce and one which included an award of money damages. Northwinds did not initiate any legal proceeding against Ms. Friday after 13 July 2000. On 5 August 2000, Ms. Friday submitted a personal check to Northwinds for $760. On 7 Aug. 2000, Northwinds returned the check because it

did not represent the total amount due on Ms. Friday's account. Ms. Friday testified that she vacated her apartment "[i]n August." In August 2000, Ms. Friday submitted an application and a $99 administrative fee to Wind Lake Apartments ("Wind Lake"). Upon Wind Lake's rejection of Ms. Friday's application for an apartment, she asked Northwinds what information it had given to Wind Lake. Northwinds said that the only information it gave to Wind Lake was that Ms. Friday had a delinquent balance on her account. On 18 September 2001, Ms. Friday filed a complaint against Northwinds, alleging violations of the UDTPA, violations of the NCDCA, abuse of process and slander. She requested treble and punitive damages. Northwinds answered and counterclaimed for unpaid rent for July and August.

After unsuccessful attempts to settle the case, the parties appeared for a non-jury trial on 8 October 2001. In a final judgment entered 20 November 2001, plaintiff was awarded treble damages in the amount of $26,679 and attorney's fees of $9,000. Since defendant assigns error to the findings of fact and conclusions of law in the final judgment, we will review the trial court's rulings under a non-jury trial standard of review. In light of our decision we need not consider defendant's post-trial motions.

### Standard of Review

"The standard of review on appeal from a judgment entered after a non-jury trial is 'whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment.' " *Cartin v. Harrison*, 151 N.C. App. 697, 567 S.E.2d 174 (2002), *review denied*, 356 N.C. 434, —— S.E.2d —— (2002) (quoting *Sessler v. Marsh*, 144 N.C. App. 623, 628, 551 S.E.2d 160, 163, *disc. review denied*, 354 N.C. 365, 556 S.E.2d 577 (2001)). We will consider the applicable findings and conclusions according to defendant's assignments of error.

### Damages Awarded to Plaintiff

The trial court found as a fact that the following damages should be awarded to plaintiff:

[N]ine late fees assessed at $30, six being collected ($270); two administrative fees collected ($200); one administrative fee charged ($100); five months rent at $465 []($232[5]); injury to her reputation, and mental suffering, humiliation, inconvenience, and embarrassment ($6,000); total damages $8,893.

The trial court then ordered:

> [T]hat [p]laintiff shall have and recover of the [d]efendant the full sum of $26,679.00, the Court having trebled damages found in the sum of $8,893.00, together with the costs of court as taxed by the Clerk, which costs shall include attorneys fees for plaintiff, in the further sum of $9,000.00, pursuant to GS 75-1.1 et seq. . . . The [p]laintiff shall not recover for abuse of process, for slander, nor for punitive damages, and those actions are dismissed.

After reviewing the record, we conclude that the evidence presented at trial does not support many of the findings of fact made by the trial court as contained in its final judgment. Further, we conclude that the trial court's conclusions are not in accordance with law with respect to certain statutes discussed below. For the reasons stated herein, we hold that the trial court erred in ordering certain damages and in trebling those damages.

I. N.C. Gen. Stat. § 42-46

[1] Defendant first contends that the trial court erred in its finding that Northwinds violated N.C. Gen. Stat. § 42-46 by charging a late fee in excess of 5% of the rental cost by stating in its lease that a late fee of $31 will be charged and by charging an administrative fee of $75 as being a "type of 'late charge,'" which would exceed the 5% limitation in GS 42-46(a)." We disagree with respect to the lease provision for a $31 late fee. We agree with respect to the $75 administrative fee.

Late fee

N.C. Gen. Stat. § 42-46 provides:

> (a) In all residential rental agreements in which a definite time for the payment of the rent is fixed, the parties may agree to a late fee not to exceed fifteen dollars ($15.00) or five percent (5%) of the rental payment, whichever is greater, to be charged by the lessor if any rental payment is five days or more late.
>
> . . .
>
> (c) Any provision of a residential rental agreement contrary to the provisions of this section is against the public policy of this State and therefore void and unenforceable.

N.C. Gen. Stat. § 42-46(a) and (c) (2001). Northwinds adopted a computer program that calculates a 5% late payment amount for each tenant. Northwinds' rental agents include a late payment charge

in each tenant's lease agreement. In this case, the computer's calculation of 5% of plaintiff's $610 rent equaled $30.50. The rental agent dealing with Ms. Friday's account rounded the $30.50 charge up to $31.00. Thus, plaintiff's lease agreement stated: "A $31.00 late charge, together with all reasonable costs of collection, including legal fees, shall be payable with any rent not received on or before the fifth day of each calendar month." Despite this statement in the lease, Ms. Friday was never charged and never paid more than $30 for her late rent payment fees. On all the notices that Northwinds sent to Ms. Friday regarding her rent being overdue, the late fee was stated as $30.

We cannot, however, ignore the clear language of the statute that "any provision of a residential rental agreement contrary to the provisions of this section," which includes the provision that a late fee cannot exceed five percent of the rental payment, "is against the public policy of this State and therefore void and unenforceable." N.C. Gen. Stat. § 42-46(c) (2001). We hold that although Northwinds only charged and Ms. Friday only paid a $30 late fee each time her rent was late, the $31 late fee provision of the Northwinds lease agreement is contrary to the provisions of G.S. § 42-46(a) and therefore void and unenforceable as against North Carolina public policy. Thus, plaintiff's account status should reflect a credit of the amount paid, i.e., $30 for each time Ms. Friday submitted a late payment to Northwinds.

Administrative Fee

In addition, Northwinds' lease agreements provide in a "Special Clauses" section: "If legal papers are filed against you, there will be an additional $75.00 administrative fee included to any court cost and rent due." Ms. Friday initialed this provision in her lease agreement dated 1 September 1999. The trial court found as a fact that the $75 administrative fee in the special clauses section of the lease agreement is "a type of 'late charge,' which would exceed the 5% limitation in GS 42-46(a)." We disagree. The $75 administrative fee is not a further type of late fee. The evidence in the record shows that Northwinds' lease agreement provides for a late fee of $31. The $75 fee is designated as an "administrative fee" that is only applied upon legal papers being filed against the tenant. The sole charge for rent being paid after the fifth of the month is $31. Only upon a filing of legal papers will the administrative fee be applied. Thus, the $31 late fee is charged if Ms. Friday does not pay her rent by the fifth of the

month, but the $75 administrative fee is only charged if legal papers are filed against a tenant. A lease providing for a fee reasonably related to such an additional expense incurred and not solely relating to rent being late does not violate G.S. § 42-46. Such a fee is not a subterfuge, as implied by the trial court's ruling, for allowing a lessor to collect a late fee exceeding 5% of the rent payment. Ms. Friday initialed the administrative fee provision in the lease, indicating she agreed to this provision being added into the lease. By signing the lease agreement, she assented to the terms therein, including the administrative fee.

Having decided that the $75 administrative fee is lawful, the issue remains as to Northwinds' liability for the three times it mistakenly charged Ms. Friday $100 instead of $75 when ejectment actions were filed against her. We will consider this issue in our discussion of G.S. §§ 75-54 and -55 below.

## II. UDTPA and III. NCDCA

[2] In its next two assignments of error, defendant argues that the trial court erred in finding that Northwinds violated the UDTPA and that it violated the NCDCA. We disagree with respect to certain actions found to be violations by defendant.

The UDTPA is found in N.C. Gen. Stat. Chapter 75. Article 1, § 75-1.1, states:

(a) Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful.

N.C. Gen. Stat. § 75-1.1(a) (2001). Article 2 sets out prohibited acts by debt collectors. We hold that defendant, in seeking to recover past due rent and related charges, is a debt collector as defined under the NCDCA, Article 2, § 75-50. This Court has previously held that, "Chapter 75 applies to residential rentals because the rental of residential housing is commerce pursuant to § 75-1.1." *Creekside Apartments v. Poteat*, 116 N.C. App. 26, 446 S.E.2d 826 (1994) (citing *Love v. Pressley*, 34 N.C. App. 503, 516, 239 S.E.2d 574, 583 (1977)); *see also Spinks v. Taylor*, 303 N.C. 256, 278 S.E.2d 501 (1981); *Davis Lake Community Ass'n, Inc. v. Feldmann*, 138 N.C. App. 292, 530 S.E.2d 865 (2000); *Reid v. Ayers*, 138 N.C. App. 261, 531 S.E.2d 231 (2000). Thus, defendant is subject to all provisions of Chapter 75, including Article 2, § 75-56, which states *inter alia*:

The specific and general provisions of this Article [Article 2 Prohibited Acts by Debt Collectors] shall exclusively constitute the unfair or deceptive acts or practices proscribed by G.S. 75-1.1 in the area of commerce regulated by this Article. Notwithstanding the provisions of G.S. 75-15.2 and G.S. 75-16, in private actions or actions instituted by the Attorney General, civil penalties in excess of two thousand dollars ($2,000) shall not be imposed, nor shall damages be trebled for any violation under this Article.

N.C. Gen. Stat. § 75-56 (2001). Thus, for any "unfair or deceptive acts or practices proscribed by" § 75-1.1 that are covered by Chapter 75, Article 2, civil penalties are limited to $2,000 and any damages assessed cannot be trebled. *Id.* If a conclusion of law is made that a debt collector violates a provision of Article 2, then that violation can be "also a violation of GS 75-1.1," as the trial court found in this case with respect to Northwinds' charge for attorney's fees. However, a debt collector who violates a provision of Article 2 and thereby violates G.S. § 75-1.1, is only subject to the damages and penalty provided for in Article 2, § 75-56 and is not subject to the damages provisions in Article 1.

An attempt by a debt collector to collect a late fee for past due rent falls under Article 2 of Chapter 75, the debt collection statute, as a late fee comes within the definition of "debt" under § 75-50. We have concluded that the $31 late fee stated in plaintiff's lease agreement with Northwinds is void as being in violation of G.S. § 42-46. Therefore, because Northwinds is a debt collector under Chapter 75, Article 2, the evidence could support a conclusion that Northwinds violated certain Article 2 provisions by a lease provision that violates G.S. § 42-46 by stating a late fee that exceeds 5% of the rent payment. The evidence supports a finding that Northwinds may have violated the following Article 2 provisions: §§ 75-54(4),(6) and 75-55(2).

§ 75-54(4)

This section provides:

No debt collector shall collect or attempt to collect a debt or obtain information concerning a consumer by any fraudulent, deceptive or misleading representation. Such representations include, but are not limited to, the following: . . .

(4) Falsely representing the character, extent, or amount of a debt against a consumer or of its status in any legal proceeding[.]

N.C. Gen. Stat. § 75-54(4) (2001).

**FRIDAY v. UNITED DOMINION REALTY TR., INC.**

[155 N.C. App. 671 (2003)]

Over the course of the nine months during which these events occurred, Northwinds filed three summary ejectment actions against Ms. Friday. The first complaint, filed 17 March 2000, requested a total amount of $685 consisting of past due rent of $610 and a $30 late fee and $45 for court costs. On 3 April 2000, the magistrate entered a judgment for possession in Northwinds' favor. On 14 May 2000, Northwinds filed a complaint requesting a total of $785, which included past due rent of $610, a $30 late fee, a $100 administrative fee, and $45 for court costs. The magistrate entered a money judgment of $539, which included a prorated amount of rent from the beginning of May until the date of the judgment plus a $31 late fee. The money judgment did not include the administrative fee or court costs. On 13 July 2000, Northwinds filed a complaint requesting $785, which included the same fees as stated above in reference to the 14 May 2000 complaint. The magistrate entered a judgment in Northwinds' favor for possession only and taxed $45 to Ms. Friday for court costs.

By providing for a late fee that violates G.S. § 42-46, the evidence could support a finding that Northwinds violated G.S. § 75-54(4) by "[f]alsely representing the . . . amount of a debt" against Ms. Friday when defendant requested the late fee in all three of the summary ejectment complaints, or "legal proceeding[s]," against plaintiff.

In addition, the section may be violated by defendant representing to the magistrate court in the latter two summary ejectment complaints that Ms. Friday owed Northwinds a $100 administrative fee when the lease provides for a $75 administrative fee.

With respect to the $45 sought to be recovered when defendant files a summary ejectment action, we note that the trial court found as a fact:

> Defendant designated court costs as attorneys fees because the accounting codes on the computer it uses applied in several states. However, the effect on an unsophisticated debtor of the March 23, 2000 letter was that an attorney fee was being charged where no lawyer had been involved in their dealings to that point. Claiming an attorney fee in the March 23 letter violated GS 75-5[4](4), by falsely representing the character and extent of the debt.

This finding is unsupported by the evidence presented. The notices Northwinds sent to Ms. Friday regarding her past due rent and the other charges incurred stated:

If you have not paid all money due by [applicable date], eviction papers will be filed and an additional $100.00 administrative fee and $45.00 court cost will be added to any balance that is due.

The $45 is a court cost to be imposed by the trial court and not a "debt" under Article 2, § 75-50. Defendant did not make a false representation in representing to Ms. Friday that the $45 was a court cost that would be added to her balance due. Of all the notices sent to Ms. Friday regarding her overdue charges, only the 23 March 2000 letter lists the $45 as an "Attorney's Fee[]." Our conclusion that the $45 sought as a recovery of court costs is not a "debt" under Chapter 75, Article 2, prevents the finding that defendant violated G.S. § 75-54(4) by referring to the $45 as an "Attorney's Fee" in the 23 March letter. Additionally, the paragraph below the list of transaction descriptions on the notices states that the $45 is a court cost. The character of the $45 court cost is clear and defendant was not in violation of G.S. § 75-4(4) with respect to this item.

### § 75-54(6)

The $31 late fee provision may also be a violation of G.S. § 75-54(6) by defendant "[f]alsely representing that an existing obligation of the consumer may be increased by the addition of attorney's fees, investigation fees, service fees, or any other fees or charges." N.C. Gen. Stat. § 75-54(6) (2001). We do not, however, find that the $45 designated as an "attorney fee" in the 23 March 2000 letter or on the account ledger violates Article 2. As stated above, it is a court cost to be imposed by the trial court as part of its judgment and not a "debt" under Article 2, § 75-50. Thus, on remand, Northwinds' late notice regarding a $45 attorney's fee should not be concluded to be in violation of G.S. § 75-54(6).

Again the evidence may support that this section was violated by defendant representing to Ms. Friday through the notices that she owed Northwinds an administrative fee increased to $100 when her lease provides for a $75 administrative fee.

### § 75-55

This section prohibits a debt collector from using unconscionable means to collect or attempt to collect any debt. Subsection (2) states that such means include:

(2) Collecting or attempting to collect from the consumer all or any part of the debt collector's fee or charge for services ren-

dered, collecting or attempting to collect any interest or other charge, fee or expense incidental to the principal debt unless legally entitled to such fee or charge.

N.C. Gen. Stat. § 75-55(2) (2001). The trial court found that, "The false representations by letters of Defendant to Plaintiff violate GS 75-55(2), as attempts to collect a debt by unconscionable means." The evidence could support a conclusion that Northwinds violated this section by "collecting or attempting to collect" a charge "incidental to the principal debt" to which it is not legally entitled by charging void late fees and by twice overstating the administrative fee by $25. *Id.*

## IV. Trial court's findings of fact

**[3]** Defendant next assigns error to the trial court's findings of fact relating to: the notices tenant received; tenant's appearance at the 25 May 2000 magistrate hearing; Northwinds' communications with Wind Lake Apartments; damages assessed for injury to reputation, mental suffering, humiliation, inconvenience and embarrassment; and damages assessed for tenant having to live with her sister. We agree.

### The notices tenant received

The trial court found:

Under the totality of the circumstances here, it is an unfair and deceptive trade practice for a residential landlord to send a series of letters, and engage in a series of summary ejectment filings, over a period of at least five months, seeking not only to recover rent and court costs, but seeking unjustified administrative fees and void late fees, . . .

Although we have concluded that the $31 fee is void as violating G.S. § 42-46, we do not conclude that the evidence supports the above finding. Sending notices to a tenant regarding past due rent is a debt collection practice covered by Article 2 and this Article "exclusively constitute[s] the unfair or deceptive acts or practices proscribed by G.S. 75-1.1 in the area of commerce regulated by this Article." N.C. Gen. Stat. § 75-56 (2001). The evidence presented is not sufficient to support a finding that Northwinds' notices regarding overdue rent sent to Ms. Friday violate any Article 2 provision, other than as we have already concluded and discussed. Thus, on these facts, sending the notices does not constitute an unfair and deceptive trade practice.

Northwinds' communications with Wind Lake Apartments

The trial court found that "it is an unfair and deceptive trade practice for a residential landlord . . . to tell the tenant's prospective landlord that she still owes it money, and urge the prospective landlord not to rent to plaintiff because she still owes defendant money." After a careful review of the record, we find no evidence to support a finding that Northwinds "urged" Wind Lake Apartments not to rent to plaintiff. This finding is erroneous as unsupported by the evidence.

Even if, at Wind Lake's request, Northwinds stated that Ms. Friday's account with Northwinds was delinquent, this does not, in and of itself, amount to an unfair and deceptive trade practice. The question remains whether or not Ms. Friday was actually delinquent when Wind Lake conferred with Northwinds. Considering the $30 charges void under G.S. § 42-46 and the overcharge of $25 for each $100 administrative fee unlawful, then Ms. Friday's account balance may have been different from what defendant calculated when Wind Lake called Northwinds in August 2000. Our calculations show that from December 1999 through August 2000, Ms. Friday owed Northwinds a total of $5,850 consisting of nine months' rent at $610 per month; three $45 court cost fees; and three $75 administrative fees. Through July 2000, Ms. Friday paid Northwinds a total of $4,740 for the following charges: seven months of rent ($4,270); six $30 late fees ($180); two $45 court cost fees; and two $100 administrative fees. Thus, applying all that she paid to the total she owed for rent in July and August, her balance due was $1,110. If Northwinds had accepted the $760 payment she brought to Northwinds on 5 August 2000, Ms. Friday would still have a $350 outstanding balance remaining on her account. In spite of the charges that defendant wrongfully charged to plaintiff, Northwinds responded correctly and in good faith to Wind Lake's inquiry, that plaintiff's account was delinquent. We conclude that Northwinds did not violate the UDTPA by doing so.

Damages assessed for injury to reputation, mental suffering, humiliation, inconvenience and embarrassment

There is no evidence in the record that supports the trial court's finding that plaintiff suffered "injury to her reputation, and mental suffering, humiliation, inconvenience, and embarrassment." The trial court awarded Ms. Friday $6,000 in damages for these injuries. Plaintiff's complaint filed against defendant included allegations of

slander, which, if proven, would have included a finding of damage to her reputation. However, the trial court specifically found: "Plaintiff has not maintained an action for Slander [sic], as words spoken or published by the participants in a judicial proceeding are absolutely privileged."

The only possible damage to plaintiff's reputation is that the failure to remove the magistrate's judgments against plaintiff could have affected her credit reputation. The trial court found:

It is an unfair and deceptive trade practice for a residential landlord, who owns some 1500 apartments in the central Piedmont of N.C., to regularly and repeatedly take judgments against delinquent tenants for money damages and court costs, and to fail to notify the clerk to mark those judgments satisfied, as required by GS 1-329(c). . . .

We conclude, however, that defendant did not violate G.S. § 1-239. N.C. Gen. Stat. § 1-239 states:

(c) Upon receipt by the judgment creditor of any payment of money upon a judgment, the judgment creditor shall within 60 days after receipt of the payment give satisfactory notice thereof to the clerk of the superior court in which the judgment was rendered, . . . If the judgment creditor fails to file the notice required by this subsection within 30 days following written demand by the debtor, he may be required to pay a civil penalty of one hundred dollars ($100.00) in addition to attorneys' fees and any loss caused to the debtor by such failure.

N.C. Gen. Stat. § 1-239(c) (2001). Nothing in this section requires a creditor to file a notice that the judgment has been satisfied until a written demand has been made. There is no finding of fact and no evidence to support a finding that plaintiff ever submitted such a request.

In addition, there is absolutely no evidence in the record that supports the trial court's finding that United Dominion Realty Trust, Inc., d/b/a Northwinds Apartments is engaged in a practice of "regularly and repeatedly" failing to notify the clerk to mark judgments taken against delinquent tenants satisfied.

Finally, there are no allegations that plaintiff suffered from intentional or negligent infliction of emotional distress and there are no facts to support such a conclusion. Nonetheless, the trial court

awarded plaintiff $6,000 for injury to her reputation, mental suffering, humiliation, inconvenience, and embarrassment. This award is not supported by the evidence and not in accordance with law.

Damages assessed for tenant living with her sister

Plaintiff presented evidence that the rent she would have been charged if she rented an apartment with Wind Lake was $465 per month. Upon finding that Northwinds urged Wind Lake "not to rent to plaintiff because she still owes defendant money," the trial court found that plaintiff's damages include "five months rent at $465 [](\$232[5])." We find no evidence to support such a finding, which then led to an erroneous assessment of damages in the order. Plaintiff paid no rent for five months to her sister, at whose house she resided for five months. Plaintiff presented no evidence that she suffered any injury or is entitled to any damages for living rent free for five months. Thus, the $2325 assessed as damages for five months' rent at $465 is erroneous.

V.  Awarding tenant attorney's fees

**[4]** The trial court awarded plaintiff attorney's fees of $9,000 to be paid by defendant. An award of an attorney's fee is appropriate for a violation of Article 2 in the same manner as any other part of Chapter 75. G.S. § 75-56 does not limit the award of an attorney's fee as allowed by § 75-16.1. However, it will be necessary for the trial court to make new findings and conclusions consistent with this opinion to support an award of an attorney's fee.

We vacate the trial court's order and remand for the trial court to: (1) make findings of fact supported by the evidence; (2) make conclusions of law based on those findings; and (3) reassess and award the appropriate amount of damages in accordance with this opinion.

Vacated and remanded.

Judges WALKER and McCULLOUGH concur.

Judges WALKER and McCULLOUGH concurred in this opinion prior to 31 December 2002.