NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, INC., PLAIN-
TIFF v. T-N-T CARPORTS, INC., VENANCIO TORRES AND DEBORAH TORRES,
DEFENDANTS

No. COA06-1123

(Filed 4 September 2007)

## 1. Workers' Compensation— premiums—calculation

In an action to determine the calculation of workers' com-
pensation insurance premiums, the trial court did not err by con-
cluding that the work of T-N-T subcontractors and their helpers is
"Labor Only" under the contract. The use of trailers and heavy-
duty pickup trucks to transport materials to job site locations
does not transform T-N-T subcontractors from "Labor Only"
employees to "Mobile Equipment with Operators" employees for
purposes of calculating the policy premiums.

## 2. Appeal and Error— preservation of issue—failure to assign error

Defendants' failure to assign error resulted in waiving the
right to appellate review of an argument that the trial court
should have calculated workers' compensation premiums on a
different basis.

Appeal by defendants from judgment entered 16 February 2006 by
Judge Robert H. Hobgood in Superior Court, Wake County. Heard in
the Court of Appeals 21 March 2007.

*Young Moore and Henderson, P.A. by Walter E. Brock, Jr. for
plaintiff-appellee.*

*Eric P. Handler, P.C. by Eric P. Handler for defendant-
appellants.*

STROUD, Judge.

This is a breach of contract action involving an insurance con-
tract for workers' compensation and employers' liability insurance.
Plaintiff North Carolina Farm Bureau Mutual Insurance Company,
Inc. insured defendant T-N-T Carports, Inc. ("T-N-T") pursuant to
two workers' compensation insurance policies. Plaintiff issued each
policy with an initial premium determined by the estimated annual
payroll of covered T-N-T employees. This initial premium was subject
to an audit from which a final premium would be calculated. De-

**N.C. FARM BUREAU MUT. INS. CO. v. T-N-T CARPORTS, INC.**

[185 N.C. App. 686 (2007)]

fendants Venancio and Deborah Torres personally guaranteed "payment of all premiums."

The dispositive issue before this Court is whether T-N-T subcontractors and their helpers, who transport and assemble steel carports and garages, are properly classified as "Labor Only" employees or "Mobile Equipment with Operators" employees for the purpose of calculating T-N-T's final workers' compensation insurance policy premium. We hold that the trial court did not err by concluding that the work of T-N-T's subcontractors is "Labor Only." Accordingly, we affirm the trial court order entered 16 February 2006 by Judge Robert H. Hobgood in Superior Court, Wake County awarding plaintiff $260,046.50 in additional premium payments under both policies.

## I. Background

Defendant T-N-T manufactures unassembled steel carports and garages at its plant in Mount Airy, North Carolina. Between March 2001 and September 2002, defendant T-N-T sold carports and garages to buyers in approximately twenty states. Defendant T-N-T contracted with uninsured subcontractors to transport the unassembled steel materials from Mount Airy to job sites and to assemble the carports and garages on arrival. Defendant T-N-T's subcontractors and the subcontractors' helpers used heavy-duty pickup trucks to transport the unassembled steel and used various hand tools to assemble the carports and garages.

Plaintiff issued two workers' compensation insurance policies to defendant T-N-T. Policy One was in effect from 16 March 2001 to 16 March 2002. Policy Two was in effect from 16 March 2002 to 6 September 2002. Plaintiff issued each policy with an initial premium determined by the estimated annual payroll of covered T-N-T employees. For each policy, this initial premium was subject to audit from which an actual premium would be calculated. The estimated annual payroll of T-N-T subcontractors and their helpers was not included when plaintiff calculated the initial premium for either policy. However, N.C. Gen. Stat. § 97-19 requires North Carolina employers to provide workers' compensation benefits to the employees of uninsured subcontractors. N.C. Gen. Stat. § 97-19 (2005).

Because defendant T-N-T did not require, or provide proof of, workers' compensation insurance coverage from its subcontractors, plaintiff included the annual payroll of defendant T-N-T's subcontrac-

tors and their helpers when calculating the final premiums for both policies. This inclusion caused the final premium to exceed the estimated premium. Plaintiff had calculated the initial estimated premium for Policy One to be $17,005.00, but plaintiff's complaint alleged that the audit revealed that the actual premium for covered T-N-T employees, including T-N-T subcontractors and their helpers, should have been $135,462.00. Plaintiff also calculated the estimated premium for Policy Two to be $11,912.50, but plaintiff's complaint alleged that the audit revealed that the actual premium for covered T-N-T employees should have been $66,138.00. Based on these audits, plaintiff sought additional premiums in the amount of $172,682.50 plus interest.

Defendants do not dispute that the payroll of T-N-T subcontractors and their helpers must be included when calculating the policy premiums. Defendants dispute plaintiff's classification of these employees as "Labor Only" employees for purposes of determining the amount of additional premiums due. Defendants argue that T-N-T subcontractors and their helpers should be classified as "Mobile Equipment with Operators" employees. Defendants refused to pay the additional premiums demanded by plaintiff as a result of the policy audits.

On 9 February 2004, plaintiff filed suit in Superior Court, Wake County alleging breach of contract. In a consent pretrial order, plaintiff and defendants stipulated that

10. T-N-T contends, and the Court held in its order granting partial summary judgment entered herein on August 3, 2005,[1] that the Uninsured Subcontractor payments are adjusted under Subcontractor Table 2 of the Basic Manual according to the category for 'Mobile Equipment with Operators (such as but not limited to earth movers, graders, bulldozers or log skitters)', [sic] which applies not less than 33 1/3% of the subcontractor payments to the applicable rate per $100.00. Should that category be deemed to apply, Farm Bureau would in fact apply precisely 33 1/3% of the subcontractor payments to the rate to calculate the final premium.

---

1. A motion pursuant to N.C. Gen. Stat. § 1A-1, Rule 60 for relief from the 3 August 2005 order granting partial summary judgment was heard prior to trial, and on 19 January 2006, the trial court entered an order granting the Rule 60 motion and setting aside the 3 August 2005 order in its entirety. Neither party has assigned error to the trial court's ruling on the Rule 60 motion. Thus, stipulation number 10 stated only T-N-T's contention, not a ruling of the court for purposes of the trial.

11. Farm Bureau contends that the Uninsured Subcontractor payments are adjusted under Subcontractor Table 2 of the Basic Manual according to the category for "Labor only," which applies not less than 90% of the subcontractor payments to the applicable rate per $100.00. Should that category be deemed to apply, Farm Bureau would in fact apply precisely 90% to the subcontractor payments to the rate to calculate the final premium.

This matter was heard by bench trial before Superior Court Judge Robert H. Hobgood on 9 January 2006.

Plaintiff tendered Sue Taylor ("Taylor"), director of the North Carolina Rate Bureau Workers' Compensation Department ("Rate Bureau"), as an expert witness at trial. Taylor explained how the Rate Bureau classifies employees and how the Rate Bureau would apply the Basic Manual for Workers Compensation and Employers Liability Insurance ("Basic Manual") to the disputed policies.

The Basic Manual contains insurance rates and classification plans adopted by the North Carolina Rate Bureau and approved by the Commissioner of Insurance. N.C. Gen. Stat. § 58-36-100(k) and (o) (2005). N.C. Gen. Stat. § 58-36-100(k) and (o) provide that all workers' compensation insurance carriers must comply with the Basic Manual. *Id.* The Basic Manual states that "[f]or each subcontractor not providing . . . evidence of workers compensation insurance, additional premium must be charged on the contractor's policy for the uninsured subcontractor's employees according to Subcontractor Table 1 and 2" contained therein. Basic Manual for Workers Compensation and Employers Liability Insurance, Rule 2(H)(2) (2001).

Subcontractor Table 1 notes that

> [i]f the contractor has not furnished evidence of workers compensation insurance and . . . [d]oes not furnish complete payroll records, but documentation of a specific job discloses that a definite amount of the subcontract price represents payroll, . . . [t]hen to calculate the additional premium . . . [u]se the payroll amount indicated by the documentation as the payroll, subject to the minimums in Subcontractor Table 2.

Basic Manual, Subcontractor Table 1. Subcontractor Table 2 provides that "[i]f the job involves . . . [l]abor only, . . . [t]hen the minimum to calculate [the] additional premium is . . . [n]ot less than 90% of the subcontract price." Basic Manual, Subcontractor Table 2 (emphasis added). Subcontractor Table 2 further provides that "[i]f the job

involves . . . [m]obile equipment with operators (such as but not limited to earth movers, graders, bulldozers, or log skidders) . . . [t]hen the minimum to calculate [the] additional premium is . . . [n]ot less than 33 1/3% of the subcontract price." Basic Manual, Subcontractor Table 2 (emphasis added).

Based on the job description of T-N-T subcontractors and their helpers, Taylor testified that the uninsured subcontractors "should be labor only." Taylor further testified that, because the erection and installation of carports and garages required only the use of hand tools and not "mobile equipment . . . such as earth movers, graders, bulldozers, or log skidders," the majority of each subcontract price was attributable to labor. Taylor added that the mere use of motor vehicles to transport equipment and materials to job sites does not remove the subcontractors' job from the "Labor Only" category.

Defendants called a T-N-T subcontractor and subcontractor's helper to testify at trial. These witnesses explained that they used heavy-duty pickup trucks, such as Ford 250 or Chevrolet 3500 pickup trucks, to pull trailers carrying up to ten carports at a time. The trailers are designed specifically for hauling carports and garages.

Judge Hobgood entered judgment on 16 February 2006, finding as follows:

19. A typical job contracted by the uninsured contractors involved transporting steel materials manufactured by T-N-T from Mount Airy, North Carolina, to a buyer's location and then erecting the carport or garage at that location. The transportation was done using trailers, which held steel materials at least 21 feet long and carried materials for multiple carports or garages at once, pulled by DOT-registered, heavy-duty pick-up trucks . . . The erection of the carports and garages was done using hand tools provided by the uninsured subcontractors.

20. Samples of the business auto insurance policy form and general liability insurance policy form used by Farm Bureau each contain a definition of the term "mobile equipment," which definition expressly excludes "motor vehicles" and a definition of the term "motor vehicle" which expressly excludes "mobile equipment."

21. The workers compensation insurance policies issued to T-N-T by Farm Bureau contain no terms defining "mobile equipment with operators" except the parenthetical phrase "(including

but not limited to earth movers, graders, bulldozers or log skidders . . .)." Instead, the Basic Manual contains the rules for additional premium calculation for uninsured subcontractors, including Subcontractor Table 2 containing the terms in dispute, and is part of the uniform classification plan and rules that were filed by the North Carolina Rate Bureau with the North Carolina Department of Insurance, approved by the Department of Insurance, and required to be followed by all North Carolina workers compensation insurers.

Based upon these findings, Judge Hobgood concluded:

5. The installation of carports and garages by the uninsured subcontractors of T-N-T is not a job that involves "Mobile Equipment with Operators." Therefore, the job of uninsured subcontractors, who are paid for the installation of carports and garages, most appropriately falls into the category of "Labor only". Under the category of "Labor only", 90% of the subcontractor payments are subject to application of the rate for the additional premium due.

6. For the "Labor only" category, Farm Bureau applies precisely 90% of the subcontract payment to the applicable rate, no more. The parties stipulated that if the 90% rule applies then the additional premium due for the policy period March 16, 2001 to March 16, 2002, is $150,516.00. Therefore, that sum is the additional premium due for that policy period.

7. The parties have stipulated that if the 90% rule applies, then the additional premium due for the policy period March 16, 2002 to September 6, 2002, is $109,530.50. Therefore, that sum is the additional premium due for that policy period.

Accordingly, Judge Hobgood ordered defendants to pay plaintiff $260,046.50 in additional premiums. Defendants appeal, arguing that Judge Hobgood erred by concluding that the work of T-N-T subcontractors and their employees was "Labor Only."

II. "Labor Only" vs. "Mobile Equipment with Operators"

[1] Defendants argue that Judge Hobgood erred by concluding that the work of T-N-T subcontractors and their employees was "Labor Only." In support of their argument, defendants assert that the trial court's conclusion is illogical because the trial court's findings reveal that installation of carports and garages is only part of the subcontractors' job. We disagree.

"The standard of review on appeal from a judgment entered after a non-jury trial is 'whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment.' " *Friday v. United Dominion Realty Tr., Inc.*, 155 N.C. App. 671, 674, 575 S.E.2d 532, 534 (2003) (internal citation omitted). In a non-jury trial setting, "the court's findings of fact have the force and effect of a verdict by a jury and are conclusive on appeal if there is evidence to support them, even though the evidence might sustain findings to the contrary." *Williams v. Pilot Life Ins. Co.*, 288 N.C. 338, 342, 218 S.E.2d 368, 371 (1975).

Here the trial court found that T-N-T subcontractors and their helpers transport materials on trailers pulled by heavy-duty pickup trucks. The trial court further found that when referring to "Mobile Equipment with Operators," both policies expressly state that mobile equipment is equipment "such as but not limited to earth movers, graders, bulldozers or log skidders." These "mobile equipment" construction vehicles are inherently different from the trailers and heavy-duty pickup trucks used by T-N-T subcontractors and their helpers. Such construction vehicles are designed principally for use off public roads, generally travel on crawler threads, and are maintained to provide mobility to permanently mounted construction equipment. The heavy-duty pickup trucks and trailers used by T-N-T subcontractors and their helpers are designed to travel on public roads and to transport the unassembled steel materials.

We hold that the use of trailers and heavy-duty pickup trucks to transport materials to job site locations does not transform T-N-T subcontractors from "Labor Only" employees to "Mobile Equipment with Operators" employees for purposes of calculating defendant T-N-T's final workers' compensation insurance policy premiums. This holding is consistent with the testimony of North Carolina Rate Bureau, Workers Compensation Department Director Sue Taylor, as discussed above.

For the reasons stated above, the trial court did not err by concluding that the work of T-N-T subcontractors and their helpers is "Labor Only." This assignment of error is overruled.

### III. "Vehicle Rule"

[2] Alternatively, defendants argue that the trial court should have calculated the additional premiums based on a "Vehicle Rule" classification, by which 33 1/3% of the subcontract price is used to deter-

mine additional premiums. However, defendants failed to assign error to Judge Hobgood's fourth conclusion of law which was: "The parties stipulated that either the Basic Manual category for 'Mobile Equipment with Operators (such as but not limited to earth movers, graders, bulldozers or log skidders' or the Basic Manual category for 'Labor only' applied to the T-N-T uninsured installers." "[S]tipulations are judicial admissions and are therefore binding in every sense, preventing the party who agreed to the stipulation from introducing evidence to dispute it . . . ." *Thomas v. Poole*, 54 N.C. App. 239, 241, 282 S.E.2d 515, 517 (1981), *cert. denied*, 304 N.C. 733, 287 S.E.2d 902 (1982) (internal citation omitted). Thus because defendants did not assign error to this conclusion, that either the "Mobile Equipment with Operators" or the "Labor Only" categories applied, defendants' rights to review of the conclusion on appeal is deemed waived. N.C.R. App. P., Rule 10(a) (2005).

## IV. Conclusion

We hold that the use of trailers and heavy-duty pickup trucks to transport materials to job site locations does not transform T-N-T subcontractors from "Labor Only" employees to "Mobile Equipment with Operators" employees for purposes of calculating defendant T-N-T's final workers' compensation insurance policy premiums. Accordingly, we affirm the trial court order entered 16 February 2006 by Judge Robert H. Hobgood in Superior Court, Wake County awarding plaintiff $260,046.50 in additional premium payments under both policies.

AFFIRMED.

Judges McCULLOUGH and CALABRIA concur.