DANIEL B. CARTIN, SR., PLAINTIFF V. SHUFORD EDWARD HARRISON AND WIFE, RENEE EDMISTON HARRISON, DEFENDANTS

No. COA01-820

(Filed 6 August 2002)

### 1. Real Property— chain of title—1880 partition report

The trial court did not err in a non-jury trial to determine ownership of land by holding that plaintiffs proved an unbroken chain of title where defendants pointed to an 1880 partition report that did not indicate whether all of the relevant heirs were included in the proceeding. The partition proceeding connected the relevant parties in the chain of title, and plaintiff's expert testified that the deeds and documents established a complete chain of title with little chance of a challenge to the partition.

### 2. Real Property— findings—location—within chain of title descriptions

In a non-jury trial to determine ownership of a tract of land, competent evidence supported the trial court's findings that the disputed property could be located within the description of plaintiff's property going back through plaintiffs' chain of title. Those findings support the conclusion that the location of the property is as shown in surveys.

Appeal by defendants from judgment entered 21 June 1998 by Judge William A. Leavell in Watauga County District Court. Heard in the Court of Appeals 28 March 2002.

*Di Santi Watson & Capua, by Anthony S. di Santi and Andrea N. Capua, for plaintiff-appellees.*

*McElwee Firm, PLLC, by John M. Logsdon, for defendant-appellants.*

MARTIN, Judge.

This appeal arises out of a real property boundary dispute originally between Daniel B. Cartin and defendants Shuford Edward Harrison and Renee Edmiston Harrison, each of whom claimed superior title to approximately seven acres of land. Cartin filed a complaint on 19 May 1995, seeking a judgment declaring him owner of the property, "free from the claim of the Defendants." Defendants filed an answer, counterclaim, and cross-claim, seeking a declaration that they were the owners of the disputed property. On 3 March 1998, the trial court granted Cartin's motion to join Donald and Ann Smart, who purchased the property from plaintiff and who are now the real parties in interest (hereinafter, "plaintiffs"). Following a pre-trial conference, the trial court entered a consent order which provided that the court "shall hear only issues related to plaintiffs' assertion that it has superior record title to the property in dispute by reason of a connected chain of title to the State of North Carolina." The parties agreed to bifurcate the trial, allowing defendants "the opportunity, if necessary, to prosecute their counterclaims at a future jury session of Watauga County District Court," and, if necessary, to pursue defendants' cross-claim against third-party defendants.

After the parties waived their rights to a jury trial on the issue of whether plaintiffs could establish a connected chain of title to the State of North Carolina, the trial court heard evidence at a bench trial. Plaintiffs based their claim of superior title upon a series of conveyances originating in three grants from the State of North Carolina. Defendants acknowledge that plaintiffs proved a connected chain of title from themselves back to John Storie and from William Storie to the State; however, defendants challenge plaintiffs' proof that a valid connection in the chain of title was established between William Storie and John Storie. With respect to that link in the chain, plaintiffs offered evidence of a proceeding to partition the "landed estate of Wm. A. Storie." The evidence included a document which stated that it was "[t]he foregoing Reports of the Jurors who laid and partitioned real estate of Wm. Storie Dec. [deceased] among his heirs at law on 15th day of June 1880 . . . ." and it allotted to John Storie a parcel of

CARTIN v. HARRISON

[151 N.C. App. 697 (2002)]

land from the William A. Storie property, and provided a legal description of that parcel. Plaintiffs' expert, Joseph M. Parker, Jr., testified that all deeds in plaintiffs' chain of title were valid deeds, and that the documents, taken together, established a complete chain of title. Parker stated the partition proceeding report "does include the property in question. And although it may not be a deed, it does, I think, convey, pass on the title." On cross-examination, Parker admitted that the partition proceeding documents do not indicate whether all heirs of William Storie were included in the partition proceeding, and that if an individual heir was not included in the proceeding, the partition proceeding would not be effective. Nevertheless, Parker stated that the possibility of a challenge to the partition was "remote," and that he "would pass on titles where you may not have all the heirs but you feel reasonably assured that you did, particularly if it's this old." Parker stated that plaintiffs had established "good title." Following completion of the plaintiffs' evidence, defendants presented evidence, including the testimony of two licensed surveyors, Lewis Cox and James Murray Gray; neither surveyor, however, conducted surveys of the parties' respective properties.

The trial court found facts, concluded that plaintiffs had established "a legally sufficient chain of title back to the State of North Carolina, and Plaintiffs' title to the disputed property is superior to Defendants;" and entered judgment declaring plaintiffs to be the owners in fee simple of the property. Defendants submitted to a voluntary dismissal without prejudice as to their counter-claim and gave notice of appeal.

---

The standard of review on appeal from a judgment entered after a non-jury trial is "whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment." *Sessler v. Marsh*, 144 N.C. App. 623, 628, 551 S.E.2d 160, 163, *disc. review denied*, 354 N.C. 365, 556 S.E.2d 577 (2001).

[1] Defendants first contend the trial court erred in holding that plaintiffs proved an unbroken chain of title from the State of North Carolina. A party may establish good title to real property by several methods, one of which involves proof of a connected chain of title from the party to the State of North Carolina. *Mobley v. Griffin*, 104 N.C. 112, 10 S.E. 142 (1889). Defendants concede in their brief to this Court that plaintiffs have proved a connected chain of title from themselves back to John Storie and from William Storie to the State.

Defendants argue, however, that plaintiffs did not establish a valid connection in the chain of title between William Storie and John Storie.

The documentary evidence offered by plaintiffs included a "decree for partition," signed by "J.H. Hardin, CSC, Probate Judge"; a "partition" of the "landed estate of Wm. A. Storie," which specifically allotted to John Storie a parcel of land from the Wm. A. Storie property, and described that parcel; and a report of the partition by the "duly appointed" commissioners, which stated,

> The foregoing Reports of the Jurors who laid and *partitioned real estate of Wm. Storie Dec. [deceased] among his heirs at law* on 15th day of June 1880 is enrolled and together with the Judgment and decree confirming the same is hereby certified to the Register of Deeds of Watauga County and ordered to be registered in the Register's office of said county (emphasis added).

The report was dated 29 June 1880 and signed by "J.H. Hardin, CSC, Probate Judge." Plaintiffs' expert, Joseph M. Parker, Jr., testified that all deeds in plaintiffs' chain of title were valid deeds, and that the documents established a complete chain of title. Parker also testified regarding the connection in the chain from William Storie to John Storie. Parker stated that the Commissioner's report "does include the property in question. And although it may not be a deed, it does, I think, convey, pass on the title." In fact, pressed on cross-examination about whether the documents from the partition proceeding indicated that all heirs of William Storie had been included, Parker stated that the chances of a challenge to the partition were "remote," and that plaintiffs had established "good title" on the basis of "this document and the full chain of title." Parker explained,

> if you go back into the 1880s and 1890s and you worry about every time something may not have been procedurally correct in accordance with the procedural rules at that time and there may have been a missing heir, we wouldn't have many good titles.

Plaintiffs' chain of title is distinguishable from the title found defective in *McDonald v. McCrummen*, 235 N.C. 550, 70 S.E.2d 703 (1952), cited by defendants in support of their contention that plaintiffs' chain was incomplete. In *McDonald*, land was granted by the State of North Carolina to Aaron Murchison, and years later an "O.B. Murchison" purported to convey this same land through a deed to the plaintiff. There was no evidence, however, that O.B. Murchison was

an heir to Aaron Murchison or that he otherwise acquired title from Aaron Murchison:

> It may be that O. B. Murchison is the heir, or an heir of the first, and as such could maintain an action against a third party to recover the land, [citation omitted] but the testimony of plaintiff is that "I do not know what kin O. B. Murchison was to A. A. Murchison,—they were some of my own people." Titles to land may not rest in so thin veil of uncertainty.

*Id.* at 553, 70 S.E.2d at 706. In *McDonald,* because the plaintiff provided no documentation of a conveyance from Aaron Murchison to O.B. Murchison, there was an actual break in the chain from the State to the plaintiff. As the Supreme Court explained, "the trouble with this effort is that it does not connect." *Id.* at 553, 70 S.E.2d at 705.

In the present case, by contrast, the partition proceeding is one of a series of documents conveying the land originally owned by the State and currently owned by plaintiffs. The partition proceeding states that the landed estate of William Storie, deceased, was to be divided among his heirs at law, which included John Storie. The trial court found facts establishing the chain of title and concluded as a matter of law: "Plaintiffs' [sic] have a legally sufficient chain of title back to the State of North Carolina, and Plaintiffs' title to the disputed property is superior to Defendants." Unlike the plaintiff's chain in *McDonald,* the partition proceeding conveyance in the present plaintiffs' chain connected the title from William Storie to his heir at law, John Storie. Defendants concede plaintiffs in the present case provided a connected chain from the State to William Storie, and from John Storie to plaintiffs. Thus, we affirm the trial court's conclusion that plaintiffs have established a connected chain of title to an original grant from the State of North Carolina, superior to defendants' title, *Mobley v. Griffin, supra,* and defendants assignments of error to the contrary are overruled.

[2] In their second argument, defendants assert the trial court erred in holding that plaintiffs proved that the property described in their current deed is included within the descriptions in each of the documents comprising their chain of title. Where title to land is in dispute, the "claimant must show that the area claimed lies within the area described in each conveyance in his chain of title and he must fit the description contained in his deed to the land claimed." *Cutts v. Casey,* 271 N.C. 165, 167, 155 S.E.2d 519, 521 (1967) (citations omitted). Nevertheless,

[t]he fact that the descriptions in deeds forming the chain of title are not identical is not material if the differing language may in fact fit the same body of land, and if it is apparent from an examination of the descriptions in the several deeds that the respective grantors intended to convey the identical land, effect will be given to the intent.

*E. I. Du Pont De Nemours & Co. v. Moore,* 57 N.C. App. 84, 88, 291 S.E.2d 174, 176, *cert. denied,* 306 N.C. 383, 294 S.E.2d 207 (1982) (citation omitted).

The trial court made the following findings of fact:

29. Plaintiffs' expert witness, surveyor Frank Hayes, has located the subject property and all of the properties within Plaintiffs' chain of title on the earth's surface by reliance, <u>inter alia</u>, on the following:

a. All documents in Plaintiffs [sic] chain of title as reflected in the public records;

b. Various documents in the chains of title of surrounding property owners;

c. Various unrecorded maps relating to the subject property;

d. Location of physical monuments on the ground, being those reflected on the various surveys, maps and charts entered into evidence;

e. Location of a ridge (as described in Grant 1050);

f. Location of Grants 119 on the ground (adjacent to Plaintiffs' property on the western boundary), and reliance on consistent calls between Grant 119 and Plaintiffs' Grants;

g. Use of aerial photographs depicting use of Plaintiffs' property in the 1940's and 1950's; h. Location of marked trees along the northern boundaries of Grant 33;

In addition, the trial court found that all of the disputed property "is included in Plaintiffs' Property," but that the legal description of defendants' property does not include "all of the disputed land."

Frank Hayes, who was permitted to testify as an expert witness in the field of land surveying, testified that he was familiar with every legal description in plaintiffs' chain of title. First, Hayes testified that

the three most recent deeds in plaintiffs' chain of title had the same legal description. The 1885 deed, conveying the parcel of land from John Storie to J.B. Storie, was "very similar" to the later descriptions, according to Hayes. Referring to the deed, dated 9 December 1885, Hayes stated, "It is my opinion that it is the intent of the Cartin deed to convey the same property that is shown here." Hayes testified that he discovered a "very good description" in the partition proceeding documents from William Storie to John Storie. Hayes also reviewed the description in Grant 1050 from the State of North Carolina, dated 27 November 1880, as well as the deed from Joshua Storie to William Storie. Joshua Storie acquired his land from two grants from the State of North Carolina, Grant 33 and Grant 3676, which is referred to as the "Rich Hillside Tract." Hayes testified that he was able to use the description of Grant 3676 to locate the Rich Hillside Tract on the ground, in spite of the fact that he did not find corners in the Tract based on specific existing "monumentation":

> Now, you've got to understand that the Rich Hillside Tract was laid out in—there are stumps in the woods and to say that there's not a stump close to the northeast corner of the Rich Hillside Tract—there are stumps, but again, these are monuments that were in existence in 1833 and/or 1835—anyway, in the 1830s. That would [sic]—165 years plus.

Hayes testified that the description in plaintiffs' deed "fits into the composite of the deeds of the back title."

Defendants' evidence included the testimony of Lewis Cox, a licensed surveyor. Cox did not undertake a survey of the parties' respective properties; instead, Cox merely reviewed existing surveys prepared by the parties. Further, James Murray Gray, also a licensed surveyor employed by defendants, testified that he did not conduct a survey of either plaintiffs' property or defendants' property, but rather conducted surveys of adjoining properties. In fact, Gray stated that he had no opinion as to who owned the overlapping area which was the subject of the cause of action.

The weight and credibility to be accorded the testimony of each of these witnesses was for the trial court as fact finder. *Scott v. Scott*, 336 N.C. 284, 442 S.E.2d 493 (1994). The trial court's findings that the disputed property could be located within the description of plaintiffs' property going back through plaintiffs' chain of title is supported by competent evidence and those findings support its conclusion that the location of the disputed property on the ground is as reflected on

THOMPSON v. FIRST CITIZENS BANK & TR. CO.

[151 N.C. App. 704 (2002)]

the surveys done by Walter McCracken and Frank Hayes. Defendants' assignments of error are overruled.

Because we determine plaintiffs have established superior chain of title using the traditional method of connecting the chain to a grant from the State of North Carolina, and have presented sufficient evidence to locate the property on the ground, we need not reach defendants' remaining assignments of error.

Affirmed.

Judges TYSON and THOMAS concur.