MURPHY, Judge.
 

 *254
 
 Laura Ward ("Laura") appeals from the 5 February 2016 Order partitioning real property. She contends that the trial court erred in concluding that an implied-in-fact contract did not arise through the conduct of the parties over the fifteen years preceding the filing of the petition to partition. She also argues that the trial court erred in failing to apply principles of equity relating to partitions. We disagree, and accordingly affirm the ruling below.
 

 Factual Background
 

 Alonza Ward, Jr. ("Alonza") and Laura had been married for nearly six years when in 1973 they purchased as tenants by the entirety the property at issue-2010 Edenton Street, Kill Devil Hills, North Carolina. At some point thereafter, Alonza had an affair with his current wife, Marie Ward ("Marie"). Alonza and Laura separated in 2000, and Laura continued to live in the home at the Edenton Street address with the couple's minor son. During that time, Laura paid all maintenance costs and property taxes associated with the home without support or contribution from Alonza. Alonza and Laura divorced in 2006 and share the property as tenants in common.
 

 Between the time of their separation and divorce proceedings, Laura's lawyers sent three different letters to Alonza, proposing,
 
 inter alia
 
 , that he agree to convey all rights in the property to her. However, Alonza never responded to those letters, nor did he sign any document acknowledging their terms.
 

 As part of their divorce proceedings in 2006, both parties sought equitable distribution of the marital estate. Laura sought an unequal distribution in her favor on the grounds that (1) she alone bore the expenses associated with the maintenance of the property after the couple's separation; and (2) Alonza abandoned the marital relationship. Their divorce was finalized on 6 July 2006, but Alonza's and Laura's claims for equitable distribution remained pending.
 

 On 9 May 2007, the trial court scheduled an equitable distribution pretrial conference for 31 July 2007 and ordered Alonza and Laura to submit equitable distribution inventory affidavits by specified dates-11 June 2007 for Alonza and 12 July 2007 for Laura. The trial court specifically noted that failing to file those affidavits or being unprepared to proceed at the pretrial conference would result in dismissal of the parties' claims for equitable distribution. On 9 June 2007, Alonza voluntarily dismissed his equitable distribution claim. Neither party filed
 
 *255
 
 an equitable distribution inventory affidavit or appeared for the pretrial conference. However, on 30 August 2011, Laura moved for summary judgment on her claim for unequal equitable distribution. Ultimately, Laura's claim was dismissed for failure to comply with the trial court's mandated deadlines. Laura appealed that decision to this Court, and we affirmed the dismissal.
 
 [1]
 

 On 21 January 2015, Alonza and Marie jointly petitioned the Dare County Clerk of Superior Court for a partition by sale of the property, with the proceeds therefrom to be divided in proportion to Laura's and Alonza's respective interests in the home. Laura's response to the petition included a motion to dismiss Marie from the petition; a counterclaim for offset of the expenses she incurred maintaining the property; and affirmative defenses of waiver of the right to partition as well as estoppel. Specifically, Laura contended that Alonza waived his interest in the property through an implied-in-fact contract providing that she would remain in the home
 
 *528
 
 after he abandoned their marital relationship and property, and further that he should be estopped from violating his own agreement.
 

 On 13 August 2015, the Dare County Clerk of Superior Court issued a ruling that Laura was not entitled to reimbursement from Alonza for maintenance and repairs, but should be compensated for the property taxes she paid. The Clerk also granted Alonza and Marie's petition, ordering the property be sold by private sale and the proceeds therefrom divided equally between Alonza and Laura. On 24 August 2015, Laura appealed the Clerk's order to the Dare County Superior Court.
 

 On 19 November 2015, the Superior Court conducted a
 
 de novo
 
 hearing at which it considered testimony from Alonza, Laura, and their daughter, Christine Gray. On 5 February 2016, the trial court likewise ordered the property be partitioned by sale, with the proceeds equally divided between Alonza and Laura. The trial court also determined that Laura was entitled to reimbursement of one-half of all maintenance costs and property taxes she paid on the property since 6 July 2006. The trial court based this conclusion on the finding that there was neither a written agreement, nor conduct between the parties, that would give rise to either an implied-in-fact contract to transfer ownership of the property or to waive Alonza's right to partition. Laura timely appealed the order of partition to this Court.
 

 *256
 

 Analysis
 

 I. Standard of Review
 

 The standard of review on appeal from a judgment entered after a non-jury trial is whether there is competent evidence to support the trial court's findings of fact and whether those findings support the conclusions of law and ensuing judgment.
 
 Cartin v. Harrison
 
 ,
 
 151 N.C.App. 697
 
 , 699,
 
 567 S.E.2d 174
 
 , 176,
 
 disc. review denied
 
 ,
 
 356 N.C. 434
 
 ,
 
 572 S.E.2d 428
 
 (2002). Competent evidence is evidence "that a reasonable mind might accept as adequate to support the finding."
 
 Forehand v. Forehand
 
 ,
 
 238 N.C.App. 270
 
 , 273,
 
 767 S.E.2d 125
 
 , 128 (2014) (citation and quotation marks omitted). Upon determining that there is competent evidence to support the trial court's findings, this Court is bound by the trial court's findings of fact, even if there is evidence in the record that would sustain findings to the contrary.
 
 Hensgen v. Hensgen
 
 ,
 
 53 N.C.App. 331
 
 , 335,
 
 280 S.E.2d 766
 
 , 769 (1981).
 

 II. Implied-in-Fact Contract
 

 Laura first argues that the trial court's finding that there was no implied-in-fact contract between her and Alonza is not supported by competent evidence. In particular, she takes issue with a portion of the court's twelfth finding of fact. In pertinent part, that finding states:
 

 Having considered the evidence presented and having reviewed the cases tendered by counsel for both parties, the Court finds that the cases submitted by Respondent where the Court has upheld a contract implied in fact are not applicable here because those cases are factually distinguishable. In those cases finding a contract implied in fact there has been actual conduct or some written agreement between the parties. If there was an agreement that at least impliedly modified and limited the right of partition, such an implied agreement arose from some written agreement between the parties. In this case, there is no written agreement signed by the parties that implied any agreement between the parties to waive the right to partition or to transfer ownership of the property. There was no particular conduct or action taken by either party that suggests an implied in fact contract to waive partition or transfer ownership. Rather, there were actions taken by both parties contrary to an implied agreement and indicative of a continuing dispute between the parties concerning the division of the property. ... It appears,
 
 *257
 
 by greater weight of the evidence, that there was no agreement between the parties concerning the division of the property.
 
 [2]
 

 *529
 
 Laura contends the trial court's assertion that "a petition to partition can only be denied if there is some written agreement between the parties" is incorrect. She also disagrees with the trial court's supposition that a contract implied-in-fact did not arise pursuant to the parties' conduct over the fifteen years preceding the filing of the petition to partition.
 

 As a preliminary matter, Laura misapprehends the trial court's finding. The trial court does not state that a petition to partition will be denied
 
 only
 
 if a written agreement exists between the parties. Instead, it correctly identifies two means of establishing a contract implied-in-fact: "[A]ctual conduct
 
 or
 
 some written agreement between the parties." (Emphasis added). The trial court then went on to analyze both grounds before it ultimately found that there was neither written agreement nor "particular conduct or action taken by either party" that would reveal the existence of an implied-in-fact contract.
 

 In determining whether the trial court's finding was in error, we must first examine a cotenant's rights in regard to partitions. Generally, a tenant in common retains the right to have the court physically partition any real estate in which he has an interest such that he may enjoy his share. N.C.G.S. § 46-3 (2015) ;
 
 Kayann Props., Inc. v. Cox
 
 ,
 
 268 N.C. 14
 
 , 19,
 
 149 S.E.2d 553
 
 , 556 (1966). If there is no way to physically partition the property without substantial injury to any of the interested parties, a tenant in common is equally entitled to a partition by sale. N.C.G.S. § 46-22(a) (2015) ;
 
 Kayann Props.
 
 ,
 
 268 N.C. at 19
 
 ,
 
 149 S.E.2d at 557
 
 .
 

 Although a cotenant is generally entitled to partition as a matter of right, he may waive that right by either express or implied contract.
 
 Kayann Props.
 
 ,
 
 268 N.C. at 20
 
 ,
 
 149 S.E.2d at 557
 
 ("Such an agreement may be verbal, if it has been acted upon, and it need not be expressed, but will be readily implied, and enforced, if necessary to the protection of the parties." (citation and quotation marks omitted));
 
 see also
 

 Dillingham v. Dillingham
 
 ,
 
 202 N.C.App. 196
 
 , 206,
 
 688 S.E.2d 499
 
 , 507 (2010) (recognizing doctrine of estoppel as it relates to partition proceedings will
 
 *258
 
 not permit tenant in common to exercise his right to partition when he has by express or implied agreement waived that right). This is because:
 

 In this State partition proceedings have been consistently held to be equitable in nature, and the court has jurisdiction to adjust all equities in respect to the property. Partition is always subject to the principle that he who seeks it by coming into equity for relief must do equity. Equity will not award partition at the suit of one in violation of his own agreement....
 

 Kayann Props.
 
 ,
 
 268 N.C. at 20
 
 ,
 
 149 S.E.2d at 557
 
 (internal citations and quotation marks omitted).
 

 Here, Laura was unable to provide the trial court with an express contract within which Alonza conveyed the property or waived his right to partition. Therefore, her sole ground for relief-if any-would necessarily rely on the existence of an implied-in-fact contract.
 

 [A] contract implied in fact arises where the intent of the parties is not expressed, but an agreement in fact, creating an obligation, is implied or presumed from their acts. Such an implied contract is as valid and enforceable as an express contract. ... It is essential to the formation of any contract that there be mutual assent of both parties to the terms of the agreement so as to establish a meeting of the minds. ... With regard to contracts implied in fact, ... one looks ... to the actions of the parties showing an implied offer and acceptance.
 

 Creech v. Melnik
 
 ,
 
 347 N.C. 520
 
 , 526-27,
 
 495 S.E.2d 907
 
 , 911-12 (1998) (internal citations and quotation marks omitted).
 

 At the
 
 de novo
 
 hearing on the petition to partition, the trial court considered caselaw, took testimony, and reviewed exhibits. In particular, the trial court examined three letters written by various attorneys on Laura's
 
 *530
 
 behalf over a four-year span. The first of these letters, dated 10 May 2001, was a proposed separation agreement. It enumerated suggestions as to how the couple might handle matters such as custody of the couple's minor child, his medical bills, and repairing the roof of the marital home. Relevant to the petition to partition, paragraph (7) of the letter read: "Home-You would agree to give Laura a deed conveying all your right, title and interest in the home found at 2010 Edenton Street, Kill Devil Hills, should she so request some time in the future." Alonza never signed or replied to Laura's offered separation agreement.
 
 *259
 
 On 8 March 2002, Laura's second attorney sent another proposed separation agreement to Alonza. That letter stated, in pertinent part, that
 

 The Parties are presently owners as tenants by the entirety of a house and lot.... The Husband shall convey by General Warranty Deed to the Wife the marital home and the lot on which it is situated. The Husband shall convey to the Wife his interest in the above described real property simultaneous with the execution of this Agreement by the Parties. The Wife shall have sole possession and ownership of the marital home in which she now resides.
 

 Once again, Alonza did not sign or reply to this letter.
 

 On 6 June 2005, Laura's third lawyer sent a letter to Alonza. This letter simply stated, "[Laura] has indicated to me that if she assumes an outstanding tax liability of yours with the IRS, then you will deed to her the marital residence in which she resides with your son, Travis. Please advise as to what you have agreed to with Ms. Ward." For a third time, Alonza declined to respond in any respect.
 

 At the hearing, the trial court also heard testimony. Specifically, the court heard directly from Alonza. In pertinent part, he testified as follows:
 

 Q: When you and [Laura] separated did you have a separation agreement?
 

 A: Not really.
 

 Q: Did you ever enter a written separation agreement with [Laura]?
 

 A: No, sir. I never signed anything.
 

 ....
 

 Q: So the equitable distribution suit is dismissed in 2011 and after that did you and [Laura] enter any type of agreement concerning the disposition or division of your home?
 

 A: No, sir.
 

 Q: At any point, [Alonza], have you and Laura Ward entered into any type of agreement concerning the disposition or division of your home?
 

 *260
 
 A: We discussed it but when we went to the court that first time-when we went to court the first time in '06 that is what that was all about, that is where we were at now.
 

 Q: That was never resolved?
 

 A: No, sir.
 

 ....
 

 Q: [Alonza], [Laura] never demanded child support from you following your departure, did she?
 

 A: Our agreement was I paid for the van in lieu of child support and I would pay-I carried the insurance on him, Blue Cross Blue Shield, and I also had paid all of his doctor bills which was real close to $16,000 and I also in-I believe it was-I'm not positive of the date but I can find out if I have to, I bought him a truck for $9,000 and give him a thousand dollars ... for his taxes and insurance in '07. And the truck I paid off and just give him the title and everything, then I give him a thousand dollars. And the first year we were separated, that Christmas, I give her $400 and him $300 in case.
 

 ....
 

 Q: And following your departure in September of 2000, did you ever contribute anything in a monthly payment or anything of that nature in the way of spousal support toward Laura Ward?
 

 A: Like I said before, and I have that in the first lawyer she had, I have that where she sent me ... Well, no because we had an agreement and I have that in writing. And of course I never signed that, she sent it to me from another lawyer. ... Just like I said before, we had an agreement that I
 
 *531
 
 would pay the van payment instead of alimony or child support I meant.
 

 The trial court also heard testimony from Laura. Initially, she testified that, on the day Alonza left, "he said the house was mine and everything that was in there." She also explained that it was her understanding that "the house was mine and I would take care of it." Contradictorily, however, when the trial court questioned Laura about the three letters she had attorneys send Alonza, the following exchange occurred:
 

 *261
 
 THE COURT: And for my clarification, were you at that time [you sent the letters] trying to reach some sort of settlement or agreement or trying to resolve the marital disputes?
 

 [Laura]: Yes.
 

 THE COURT: And for my clarification, I take it that the disputes over the property and all were not resolved and no final resolution was reached, is that correct?
 

 [Laura]: Correct.
 

 ....
 

 THE COURT: Didn't you understand as a result of your litigation that if you did not have a written document conveying to you your ex-husband's interest in the house and lot on which the house sat that you were not the sole owner of the property, didn't you understand that?
 

 [Laura]: Yes.
 

 The trial court also heard from Christine Gray, the couple's third child. She testified that on two or three different occasions after Alonza and Laura separated, her father told her "he wasn't going to take the house away from [Laura] because she didn't have anything else." However, when asked if he made that statement, Alonza claimed, "If I did, I do not remember that."
 

 On appeal, Laura relies on Christine's testimony as well as her own as establishing that Alonza said he was giving her the home. She also points to Alonza's testimony that an agreement existed between the parties that established Alonza would pay their youngest child's medical bills and also provide for his health insurance. Furthermore, she asserted that this testimony recognized he would pay all remaining car payments on the couple's van in place of child support or alimony. Alonza specifically noted that this agreement was in writing and sent to him by one of Laura's lawyers. Laura alleges that, if we compare these statements with the terms delineated in the first letter that one of her attorneys sent to Alonza, the two are in accord. She contends Alonza acknowledged acceptance of the offer set forth in the first proposed separation agreement. Viewing this evidence collectively, she maintains that the trial court erred in concluding an implied-in-fact contract did not arise over the fifteen years prior to the filing of the petition to partition.
 

 *262
 
 Our review of this issue is limited to an assessment of whether the trial court's findings of fact are supported by competent evidence and whether those findings support the court's conclusions of law and ensuing judgment.
 
 Cartin
 
 ,
 
 151 N.C.App. at 699
 
 ,
 
 567 S.E.2d at 176
 
 . In this case, the trial court found that there was neither a written agreement nor particular conduct or action sufficient to give rise to a contract implied-in-fact. We are satisfied that there is competent evidence to support this finding.
 
 [3]
 

 The evidence tended to show that Alonza declined to endorse or return the offered separation agreements presented to him by Laura. This demonstrates that he never assented to the terms of these offers. Alonza confirmed this proposition by expressly testifying that he and Laura never entered into any agreement concerning disposition or division of the home. Despite initially testifying that she believed the house was hers, Laura conceded to the trial court that she continued to send letters to Alonza in an attempt to reach a consensus regarding the possible transfer of Alonza's interest in the home. She also acknowledged when questioned by the trial court that she understood she was not the sole owner of the property after she emerged from litigation about the marital estate without a written document conveying to her Alonza's interest in the home. Collectively,
 
 *532
 
 this evidence tends to establish that there was never a meeting of the minds as to any proposed agreement that Alonza convey to Laura his interest in the property and that Alonza never gave up his right to partition.
 

 In terms of countervailing evidence, Christine testified that her father maintained that he would not take the house from her mother. However, Alonza testified that he did not remember making such a remark. Additionally, Laura argues that Alonza, through his testimony that an agreement existed that matched the terms of the first letter she sent him, essentially ratified the offer articulated within that letter. However, our courts have long recognized that when there is inconsistent evidence, the judge in a non-jury trial acts as both judge and jury and resolves any conflicts in the evidence.
 
 G.R. Little Agency, Inc. v. Jennings
 
 ,
 
 88 N.C.App. 107
 
 , 110,
 
 362 S.E.2d 807
 
 , 810 (1987). It is the trial court's duty to weigh all of the competent evidence presented to it, and, "[i]f different inferences may be drawn from the evidence, [the trial judge] determines which inferences shall be drawn and which shall be rejected" as he is in the best position to evaluate such discrepancies.
 

 *263
 

 Williams v. Pilot Life Ins. Co.
 
 ,
 
 288 N.C. 338
 
 , 342,
 
 218 S.E.2d 368
 
 , 371 (1975) ;
 
 Dep't of Transp. v. Elm Land Co.
 
 ,
 
 163 N.C.App. 257
 
 , 264,
 
 593 S.E.2d 131
 
 , 136 (2004) ("It is within the trial court's discretion to determine the weight and credibility given to all evidence presented during a non-jury trial. The trial court is in the best position to weigh the evidence, determine the credibility of witnesses and the weight to be given their testimony." (internal citations and quotation marks omitted)).
 

 We conclude there is competent evidence to support the trial court's finding that there was no written agreement between Alonza and Laura pertaining to their rights in the property. There is also competent evidence to support the trial court's finding that there was "no particular conduct or action" taken by either party affecting ownership of the property or Alonza's right to seek partition of the property at a later date. Therefore, we are bound by both findings on appeal.
 
 Hensgen
 
 ,
 
 53 N.C.App. at 335
 
 ,
 
 280 S.E.2d at 769
 
 . In turn, these findings are sufficient to support the conclusion that no implied-in-fact contract was ever formed between Alonza and Laura that would make her sole owner of the property or waive his right to seek partition. Accordingly, we affirm the trial court as to this issue.
 

 III. Principles of Equity
 

 Laura also asserts the trial court erred in failing to apply principles of equity in ordering partition by sale as an equitable means of distributing the real property at issue. Specifically, she asserts that, although the trial court equitably determined that Alonza's failure to make an effort to resolve the marital dispute precludes him from claiming he should not share in the expenses Laura incurred maintaining the home, it failed to apply these same equitable principles in allowing for a partition.
 

 Laura submits that Alonza may not come with unclean hands to the court to invoke its equitable powers. Laura maintains he has unclean hands because "[h]e admitted that he was in an adulterous affair with the co-petitioner, Marie W. Ward, and upon separating from the Respondent, immediately and illegally cohabitated with his co-petitioner" prior to his divorce from her. In her brief, she highlights that Alonza and Marie could have been criminally charged with a Class 2 misdemeanor and civilly sued for engaging in this relationship, but discloses that "[i]n light of the 'agreement' reached by the parties herein, this was not pursued[.]"
 

 We have already recognized that partition proceedings are equitable in nature, and the court has jurisdiction to adjust all equities in respect to the property.
 
 Henson v. Henson
 
 ,
 
 236 N.C. 429
 
 , 430,
 
 72 S.E.2d 873
 
 , 873-74 (1952). A court of equity seeking to do justice among tenants in
 
 *264
 
 common may either assign an improved or renovated portion of the property at issue to the person who undertakes those improvements or may reimburse that individual a reasonable allowance for that enhancement.
 
 Holt v. Couch
 
 ,
 
 125 N.C. 456
 
 , 461,
 
 34 S.E. 703
 
 , 705 (1899). However, it is well-settled that a trial court will only deny a cotenant's right of partition where there has been an express or implied agreement not to partition, or where partition
 
 *533
 
 would make it impossible to fulfill the terms of an agreement.
 
 Kayann Props.
 
 ,
 
 268 N.C. at 20
 
 ,
 
 149 S.E.2d at 557
 
 . Alonza's relationship with Marie prior to his divorce from Laura has no bearing on the equities associated with the partitioning of a marital home, and Laura cites no authority suggesting otherwise on appeal.
 

 Here, the trial court balanced the equities with respect to the property when it required Alonza to reimburse Laura for half of the expenses she incurred as a result of paying taxes on and maintaining the property. Therefore, Laura's argument that the trial court did not apply principles of equity is simply incorrect.
 

 Conclusion
 

 For the reasons stated above, we affirm.
 

 AFFIRMED.
 

 Chief Judge McGEE and Judge DAVIS concur.
 

 [1]
 

 Ward v. Ward
 
 ,
 
 225 N.C.App. 268
 
 ,
 
 736 S.E.2d 647
 
 (2013) (unpublished).
 

 [2]
 

 In this case, the trial court's finding regarding the nonexistence of a contract implied-in-fact is a mixed finding and conclusion because it involves the application of a legal principle to a determination of facts. When the trial court's determination is a mixture of factual findings and legal conclusions, the determination is itself reviewable by the appellate courts.
 
 Hall v. Hall
 
 ,
 
 88 N.C.App. 297
 
 , 299,
 
 363 S.E.2d 189
 
 , 191 (1987).
 

 [3]
 

 We recognize this finding is a mixed finding of fact and conclusion of law. However, this does not affect our assessment of the validity of the finding.