IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-624

Filed 21 February 2023

Hyde County, No. 19 CVS 60

HEATHER O'NEAL and FLETCHER O'NEAL, Plaintiffs,

v.

ARLEEN BURLEY, and DEVIL SHOAL OYSTER & CLAM CO., LLP, Defendants.

Appeal by defendant from judgment entered 29 April 2022 by Judge Wayland J. Sermons, Jr. in Hyde County Superior Court. Heard in the Court of Appeals 11 January 2023.

> *Sharp, Graham, Baker & Varnell, LLP, by Casey C. Varnell, for Plaintiffs-Appellees.*

> *Rodman, Holscher, Peck, Edwards & Hill, P.A., by Chad H. Stoop, for Defendant-Appellant Arleen Burley.*

CARPENTER, Judge.

Arleen Burley ("Defendant") appeals from the "Amended Judgment" entered by the trial court. In her prior appeal in this matter, Defendant challenged the trial court's original judgment, which judicially dissolved and wound up Devil Shoal Oyster & Clam Co., LLP ("Devil Shoal")[1]; the appeal was dismissed as interlocutory.

---

[1] Devil Shoal is not a party to this appeal.

*O'Neal v. Burley*, 2022-NCCOA-238 (unpublished) ("*O'Neal I*").

In the instant appeal, Defendant raises the same challenges to the trial court's

Amended Judgment: that the trial court erred in concluding Devil Shoal is a limited

partnership, and in classifying, allocating, and distributing the partnership's

assets—including insurance proceeds—and liabilities. After careful review, we agree

with Defendant that Devil Shoal is a general partnership and that the trial court

erred in its wind up of Devil Shoal. Accordingly, we reverse and remand the Amended

Judgment for the trial court to: determine Devil Shoal's date of dissolution; classify

and value Devil Shoal's assets and liabilities; satisfy any liabilities, including the

partners' contributions; and allocate to the partners any remaining property of Devil

Shoal.

## I. Factual & Procedural Background

In *O'Neal I,* we summarized the pertinent factual history of the case:

> This case arises from a dispute between two general
> partners of a partnership over the classification and
> distribution of partnership assets. On 1 October 2015,
> Plaintiff Heather O'Neal and Defendant (collectively, the
> "Partners") executed the "Limited Partnership Agreement"
> (the "Agreement"), memorializing the terms and conditions
> of the partnership. The conditions of the partnership
> included: (1) Defendant would provide the partnership use
> of a shellfish bottom lease ("Lease 9802") and related water
> column amendment, granted by the North Carolina
> Division of Marine Fisheries to Defendant in her individual
> name; (2) Plaintiff Heather O'Neal would provide the
> partnership a boat and crew to set up, maintain, and
> harvest shellfish on Lease 9802; (3) the Partners would
> share equally the costs of gear and seed; and (4) the

> Partners would share equally the net profit of the business. The Agreement also provided that the partnership term would "continue until mutually agreed dissolution or transfer."
>
> On 9 January of 2018, Devil Shoal obtained its own 4.84-acre shellfish bottom lease ("Lease 9787") and a corresponding amendment to add the superjacent water column. The Partners agreed through an addendum to the Agreement that Devil Shoal would "fully own and operate" Lease 9787 and its respective water column.
>
> In July of 2018, the Partners had discussions concerning Plaintiff Heather O'Neal buying out Defendant's share of Devil Shoal. After unsuccessful negotiations, Plaintiff Heather O'Neal informed Defendant by email on 1 August 2018 that she would be seeking a separate lease but would continue to utilize Lease 9787 with her own gear and seed until Plaintiff Heather O'Neal obtained a new lease. On 2 August 2018, Defendant responded to Plaintiff Heather O'Neal's email, advising "[a]ny seed or gear purchased by you needs to be placed on your own lease" and "[s]eed and equipment placed on the partnership leases becomes the property of Devil Shoal Oyster & Clam Co."

*O'Neal*, 2022-NCCOA-238, ¶¶ 2–4.

Between 2015 and 2017, the Partners obtained three loans for Devil Shoal: (1) a Small Business Administration ("SBA") loan for $8,900.00 to purchase a refrigerated truck; (2) "Golden Leaf Loan 1" for $15,000.00, which was used to purchase gear; and (3) "Golden Leaf Loan 2" for $15,000.00, which was used to establish Lease 9787 and purchase its equipment.

> On 17 December 2019, Plaintiff Heather O'Neal and her spouse, Fletcher O'Neal (collectively, the "Plaintiffs"), commenced the instant action by filing a verified complaint and issuing a summons for Defendant. In their complaint,

Plaintiffs sought a judicial decree dissolving the Devil Shoal partnership and a declaratory judgment against Defendant, holding she committed a violation of N.C. Gen. Stat. § 75-1.1 for unfair and deceptive trade practices by "willfully and intentionally misappropriat[ing] insurance proceeds that were paid to the Partnership . . . ." As an alternative cause of action to the Chapter 75 violation, Plaintiffs alleged a cause of action for constructive fraud related to the allocation of insurance proceeds. On 21 January 2020, Defendant filed an answer *pro se*. On 20 February 2020, Defendant filed, through counsel, an amended answer.

On 6 April 2021, a bench trial was held before the Honorable Wayland J. Sermons, Jr., judge presiding. Testimony from the parties revealed the following: Plaintiff Fletcher O'Neal performed services for Devil Shoal as the farm manager, in which he purchased seed, performed marketing tasks, sold product, and obtained the necessary permits. He was not paid by Devil Shoal for his services.

No new crops had been planted on behalf of Devil Shoal since 2017. Plaintiffs planted and harvested oyster crops on Lease 9787 in 2018 and 2019, using seed and gear they purchased individually. Defendant began planting clams again at Lease 9208 in June of 2019, which were separate from the partnership. In 2019, Hurricane Dorian destroyed "about half of [the oyster] crop" planted by Plaintiffs and some of the clam crop planted by Defendant. During this period, Devil Shoal's crops on Lease 9802 and Lease 9787 were protected under the Noninsured Crop Disaster Assistance Program ("NAP"). Plaintiffs and Defendant applied for NAP financial assistance under the partnership name because Devil Shoal was the named lessee of the Lease 9787 and "the [insurance] policy was under the partnership [name]." Based on a calculation worksheet prepared by the Farm Service Agency of the United States Department of Agriculture ("USDA"), Devil Shoal was entitled to a NAP payment of $63,328.00, minus a $ 3,157.00 insurance premium. In December of 2019, NAP proceeds totaling $59,596.00 were deposited into the

Devil Shoal bank account. Using these funds, Defendant paid off two remaining partnership loans and took $34,059.95 as her share.

In addition to NAP, Defendant and Plaintiffs applied for assistance under the Wildfires and Hurricanes Indemnity Program ("WHIP") for the damaged 2018 and 2019 crops, listing Devil Shoal as the producer. The gross WHIP payments were calculated to be $541.00 for clam crops in 2018, and $22,538.00 for oyster crops in 2019.

*O'Neal*, 2022-NCCOA-238, ¶¶ 5–8. Using the NAP funds, Defendant paid off the $8,009.12 SBA loan balance and the $7,982.07 Golden Leaf Loan 1 balance. Using a corporation she formed, Defendant assumed the remaining $8,900.12 Golden Leaf Loan 2 balance.

On 6 May 2021, the trial court entered its original judgment, in which it, *inter alia*, judicially dissolved Devil Shoal and wound up its affairs. The trial court ordered the NAP funds be allocated "75% to Plaintiff [Heather] O'Neal and 25% to Defendant Burley." The trial court dismissed Plaintiffs' unfair and deceptive trade practice claim but did not decide their constructive fraud claim. Defendant appealed to this Court, and the matter was heard on 5 April 2022. This Court dismissed the appeal as interlocutory due to the unresolved constructive fraud claim. *O'Neal*, 2022-NCCOA-238, ¶ 15.

On 29 April 2022, the trial court entered the Amended Judgment, in which it, *inter alia*: distributed Lease 9802 to Defendant and Lease 9787 to Plaintiff Heather O'Neal; distributed 75% of NAP funds to Plaintiff Heather O'Neal and 25% of NAP

funds to Defendant; distributed the partnership's refrigerated truck to Plaintiff Heather O'Neal; awarded a monetary judgment to Plaintiff Heather O'Neal for $11,572.69; and dismissed Plaintiffs' constructive fraud claim against Defendants. On 20 May 2021, Defendant gave timely written notice of appeal to this Court.

## II.    Jurisdiction

This Court has jurisdiction to address Defendant's appeal from a final judgment pursuant to N.C. Gen. Stat. § 7A-27(b) (2021).

## III.    Issues

The issues before this Court are whether the trial court erred by: (1) concluding that Devil Shoal is a limited partnership; and (2) classifying, allocating, and distributing Devil Shoal's assets and liabilities in winding up the affairs of the business.

## IV.    Standard of Review

"The standard of review on appeal from a judgment entered after a non-jury trial is whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment." *Cartin v. Harrison*, 151 N.C. App. 697, 699, 567 S.E.2d 174, 176 (citation omitted), *disc. rev. denied*, 356 N.C. 434, 572 S.E.2d 428 (2002).  Findings of fact not challenged on appeal "are deemed to be supported by competent evidence and are binding on appeal[.]" *In re K.D.L.*, 207 N.C. App. 453, 456, 700 S.E.2d 766, 769 (2010), *disc. rev. denied*, 365 N.C. 90, 706 S.E.2d 478 (2011).  We review the trial court's conclusions

of law *de novo*. *Dept. of Transp. v. Adams Outdoor Advert. of Charlotte Ltd. P'ship*, 370 N.C. 101, 106, 804 S.E.2d 486, 492 (2017).

## V.  Analysis

### A.  Nature of Partnership

In her first argument, Defendant contends "the trial court erred in concluding that Devil Shoal is a limited partnership." Defendant and Plaintiff Heather O'Neal agree the trial court's determination that Devil Shoal is a limited partnership does not impact the dissolution and winding up of Devil Shoal. After examination of the record, we conclude Devil Shoal is a general partnership, and the North Carolina Uniform Partnership Act (the "Uniform Partnership Act") governs its dissolution and wind up.

Under North Carolina law, a limited partnership is defined as "a partnership formed by two or more persons under the laws of [North Carolina] and having one or more general partners and one or more limited partners[.]" N.C. Gen. Stat. § 59-102(8) (2021). "In order to form a limited partnership, a certificate of limited partnership must be executed and filed in the office of the Secretary of State . . . ." N.C. Gen. Stat. § 59-201(a) (2021). Generally, the "failure to file a certificate of limited partnership is a failure of 'substantial compliance' such that any assertion of limited partnership is negated." *Blow v. Shaughnessy*, 68 N.C. App. 1, 19, 313 S.E.2d 868, 878 (1984), *disc. rev. denied*, 311 N.C. 751, 321 S.E.2d 127 (1984). "[W]here a limited partnership is found not to exist, it is the intent of the parties and not the

operation of law . . . that determines whether or not a general partnership results." *Id.* at 21, 313 S.E.2d at 879; *see also* N.C. Gen. Stat. § 59-36(a) (2021) (defining a general partnership as "an association of two or more persons to carry on as co-owners a business for profit").

Here, the Agreement was formed by two persons, Defendant and Plaintiff Heather O'Neal, who are identified in the Agreement as general partners. The Agreement did not name any limited partners. *See* N.C. Gen. Stat. § 59-102(8). Additionally, there is no evidence that a certificate of limited partnership was filed with the Secretary of State on behalf of Devil Shoal. *See* N.C. Gen. Stat. § 59-201(a). The Agreement is evidence of the Partners' intent to form a general partnership and share equally in the partnership's profits. *See Blow*, 68 N.C. App. at 21, 313 S.E.2d at 879; *see also* N.C. Gen. Stat. § 59-36(a). Therefore, we conclude Devil Shoal is a general partnership governed by the Uniform Partnership Act. *See* N.C. Gen. Stat. §§ 59-31 *et seq*.

## B. Classification, Allocation, and Distribution of Devil Shoal's Assets and Liabilities

In her second argument, Defendant asserts the trial court erred in classifying, allocating, and distributing the assets and liabilities of the partnership, including the proceeds received from the NAP and WHIP disaster financial assistance programs as well as Lease 9787. Specifically, Defendant contends the trial court erred in ordering the NAP and WHIP payouts to be split 75% to Plaintiff Heather O'Neal and 25% to

Defendant and in distributing Lease 9787 to Plaintiff Heather O'Neal without first assigning a value to the lease.

### 1. *Date of Dissolution*

We first consider the date of dissolution for Devil Shoal. Defendant argues the trial court erred in concluding "that the partnership should be treated as dissolved as of 1 January 2018" because this conclusion of law "is not supported by the facts of this case or the applicable law." We agree.

Initially, we note the Uniform Partnership Act provides gap-filling default rules to "govern[ ] the relations among partners and between partners and the partnership" where an agreement between the partners cannot or does not resolve the issue. 59A Am. Jur. 2d *Partnership* § 93 (2023); *see also* N.C. Gen. Stat. § 59-34(e) (2021) (explaining the Uniform Partnership Act should "not be construed so as to impair the obligations of any contract").

"The dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on [of the business] as distinguished from the winding up of the business." N.C. Gen. Stat. § 59-59 (2021). Dissolution is caused:

> (1) Without violation of the agreement between the partners,
>
> > a. By the termination of the definite term or particular undertaking specified in the agreement,

b. By the express will of any partner when no definite term or particular undertaking is specified,

c. By the express will of all partners who have not assigned their interests or suffered them to be charged for their separate debts, either before or after the termination of any specific term or particular undertaking,

d. By the expulsion of any partner from the business bona fide in accordance with such a power conferred by the agreement between the partners;

(2) In contravention of the agreement between the partners, where the circumstances do not permit a dissolution under any other provision of this section, by the express will of any partner at any time;

(3) By any event which makes it unlawful for the business of the partnership to be carried on or for the members to carry it on in partnership;

(4) By the death of any partner, unless the partnership agreement provides otherwise;

(5) By the bankruptcy of any partner or the partnership;

(6) By decree of court under [N.C. Gen. Stat. §] 59-62.

N.C. Gen. Stat. § 59-61 (2021).

"[D]issolution terminates all authority of any partner to act for the partnership." N.C. Gen. Stat. § 59-63 (2021). On the date of dissolution, the right to an account of a partnership interest accrues, unless there exists an agreement to the contrary. N.C. Gen. Stat. § 59-73 (2021). Nonetheless, the partnership itself is not terminated "until the winding up of partnership affairs is completed." N.C. Gen. Stat.

§ 59-60 (2021). "Winding up generally involves the settling of accounts among partners and between the partnership and its creditors." *Simmons v. Quick-Stop Food Mart, Inc.*, 307 N.C. 33, 40, 296 S.E.2d 275, 280 (1982).

Here, Defendant maintains "the Partnership was dissolved by the express will of . . . Defendant after the filing of the Complaint but before Defendant was served with the Complaint." As support for this contention, Defendant relies on a "Notice of Dissolution" she prepared pursuant to N.C. Gen. Stat. § 59-59 and sent via certified mail to Plaintiffs' attorney. Because the Agreement expressly required *mutual agreement* for the Partners to dissolve Devil Shoal, we reject Defendant's assertion that her notice was sufficient to dissolve the partnership.

In its Amended Judgment, the trial court did not expressly find Devil Shoal's date of dissolution but nevertheless concluded "that a Decree of Dissolution of the limited partnership should issue as a result of the actions of each partner, making it not reasonably practicable to carry on the business in conformity with the [Agreement], as of January 1, 2018." The trial court then ordered Devil Shoal was "[there]by [j]udicially dissolved." Yet, the trial court also found and concluded as a matter of law that the Partners applied for, were entitled to, and ultimately received NAP and WHIP payments, including in 2019. The conclusion of law that it was not reasonably practicable for the Partners to carry on the business of Devil Shoal as of 1 January 2018, is wholly inconsistent with the findings that the Partners acted on behalf of Devil Shoal to apply for and receive proceeds from Devil Shoal's insurance

policy for losses incurred by the partnership *after* January 2018. Therefore, we conclude that conclusion of law 6 is not supported by the trial court's findings of fact. *See Cartin*, 151 N.C. App. at 699, 567 S.E.2d at 176. Accordingly, we reverse and remand the Amended Judgment to the trial court for its determination of Devil Shoal's date of dissolution, not inconsistent with the other findings of fact.

## 2. *Classifying and Valuing Devil Shoal's Assets & Liabilities*

In the context of non-jury trials, our Court has stated: "Where findings of fact are challenged on appeal, each contested finding of fact must be separately [challenged], and the failure to do so results in a waiver of the right to challenge the sufficiency of the evidence to support the finding." *Okwara v. Dillard Dep't Stores, Inc.*, 136 N.C. App. 587, 591, 525 S.E.2d 481, 484 (2000). Notwithstanding this rule,

> an appeal constitutes an exception to the judgment and presents the question whether the facts found support the judgment. [I]t follows that an exception to a conclusion of law upon which the judgment is predicated presents the question whether the facts found support the conclusion of law.

*Halsey v. Choate*, 27 N.C. App. 49, 51, 217 S.E.2d 740, 742 (1975), *disc. rev. denied*, 288 N.C. 730, 220 S.E.2d 350 (1975).

In this case, Defendant has not challenged any specific finding of fact; thus, all findings of fact—that the trial court has correctly designated as findings of fact—"are deemed to be supported by competent evidence and are binding on appeal[.]" *In re K.D.L.*, 207 N.C. App. at 456, 700 S.E.2d at 769.

We note finding of fact 25, where the trial court apportioned insurance proceeds to the Partners based on the respective leases they were using, is a conclusion of law, and we review it as such. *See In re Estate of Sharpe*, 258 N.C. App. 601, 605, 814 S.E.2d 595, 598 (2018) ("If the lower tribunal labels as a finding of fact what is in substance a conclusion of law, we review that 'finding' as a conclusion *de novo*."). Finding of fact 25 states: "[T]he Court finds . . . 75% to Plaintiff O'Neal and 25% to Defendant Burley is a proper division of all net NAP and WHIP payments already received for the 2019 year, given the relative size and scope of each lease contributed to the Partnership by each partner." Conclusion of law 5 reiterates this conclusion.

Partnership property means "[a]ll property originally brought into the partnership stock or subsequently acquired by purchase or otherwise, on account of the partnership[.]" N.C. Gen. Stat. § 59-38(a) (2021). "Unless [a] contrary intention appears, property acquired with partnership funds is partnership property." N.C. Gen. Stat. § 59-38(b). Property belonging to one partner, "which is agreed to be used for partnership purposes, may be deemed partnership property." *Jones v. Shoji*, 110 N.C. App. 48, 53–54, 428 S.E.2d 865, 868 (1993), *aff'd*, 334 N.C. 163, 432 S.E.2d 361 (1994).

The assets of a partnership include partnership property and "[t]he contributions of the partners necessary for the payment of all the liabilities" owed by the partnership under N.C. Gen. Stat. § 59-70(2) (2021). N.C. Gen. Stat. § 59-70(1)

(2021). On the other hand, "[t]he liabilities of the partnership rank in order of payment" and are to be satisfied in the following order:

> a. Those owing to creditors other than partners.
>
> b. Those owing to partners other than for capital and profits.
>
> c. Those owing to partners in respect of capital.
>
> d. Those owing to partners in respect of profits.

N.C. Gen. Stat. § 59-70(2). "Until the liabilities [and assets] of the partnership have been determined[,] *there can be no distribution to the partners.*" *Brewer v. Elks*, 260 N.C. 470, 474, 133 S.E.2d 159, 163 (1963) (citations omitted and emphasis added); *see* N.C. Gen. Stat. 59-70.

In the instant case, the record and transcript reveal the NAP and WHIP funds were paid out to named insured Devil Shoal from an insurance policy, which covered losses incurred by Devil Shoal for shellfish crops cultivated in its leased premises. Hence, the NAP and WHIP funds were property "subsequently acquired" through Devil Shoal's insurance proceeds and are thus "partnership property." *See* N.C. Gen. Stat. § 59-38(a); *see also Jones v. Shoji*, 336 N.C. 581, 585, 444 S.E.2d 203, 205–06 (1994) (concluding the settlement proceeds from a joint venture's vehicular liability insurance policy constituted joint venture property).

The conclusion of law contained in finding of fact 25 relating to a 75/25 allocation of insurance proceeds between the Partners is not supported by the

findings or the evidence of record. On the contrary, the express terms of the Agreement show the parties intended to share partnership profits equally. Finally, there is no finding to support the conclusion regarding the sizes and scopes, and thus values, of the leases. Therefore, finding of fact 25, a conclusion of law labeled as a finding of fact, and its counterpart conclusion of law 5, are not supported by the findings. *See Cartin*, 151 N.C. App. at 699, 567 S.E.2d at 176.

On remand, the trial court—after determining Devil Shoal's date of dissolution—should classify and assign values to Devil Shoal's assets and liabilities and satisfy any liabilities owed to creditors other than the Partners. *See* N.C. Gen. Stat. § 59-70. Next, the trial court should satisfy all liabilities owed to the Partners other than for capital and profits, including reimbursement to Defendant for assuming Golden Leaf Loan 2. *See id.*

### 3. *Repayment of Partners' Contributions & Allocation of Remaining Capital*

Finally, Defendant challenges the trial court's classification and allocation of Lease 9787 and its distribution of the remaining partnership property. Under decretal 2, the trial court found "that each partner shall receive the lease they contributed to the partnership." Accordingly, the trial court concluded "Plaintiff O'Neal shall receive and be the sole holder of Lease No. 9787" and "Defendant Burley shall receive and be the sole holder of Lease No. 9807 [sic]." Defendant contends "the trial court failed to assign a value to Lease 9787 and allocate one-half that value to

Defendant since Plaintiff was awarded the lease." As discussed above, the trial court erred in distributing Devil Shoal's property before first determining its assets and liabilities and their respective values. *See Brewer*, 260 N.C. at 474, 133 S.E.2d at 163.

Under N.C. Gen. Stat. § 59-48(1), *"[e]ach partner shall be repaid his contributions*, whether by way of capital or advances to the partnership property and share equally in the profits and surplus remaining after all liabilities, including those to partners, are satisfied; and must contribute towards the losses, whether of capital or otherwise, sustained by the partnership according to his share in the profits." N.C. Gen. Stat. § 59-48(1) (2021) (emphasis added).

Here, the trial court found in finding of fact 4 that Defendant contributed Lease 9802 to the partnership, and Plaintiff Heather O'Neal contributed "labor, boats, and harvesting." In finding of fact 5, the trial court found the partnership acquired a second lease, Lease 9787, in 2018. Lastly, it ordered "each partner [to] receive the lease they contributed to the partnership."

Because there is no provision in the Agreement to the contrary, the distribution rules set out in N.C. Gen. Stat. § 59-70 are applicable to the wind up of Devil Shoal. The trial court should find each Partner's interest in Devil Shoal is 50% because the Agreement expressly stated the Partners were to share equally in all profits. The trial court should then repay the Partners for their respective contributions. *See* N.C. Gen. Stat. § 59-48(1). Finally, the trial court should allocate Devil Shoal's remaining

assets pursuant to N.C. Gen. Stat. § 59-70. *See* N.C. Gen. Stat. § 59-70 (establishing the rules for distribution to satisfy a partnership's liabilities, including monies owed to partners for capital and profits).

Accordingly, we instruct the trial court on remand to make appropriate findings regarding the value of the Partners' contributions, the repayment of the Partners' contributions, and the distribution of remaining Devil Shoal property. *See Cartin*, 151 N.C. App. at 699, 567 S.E.2d at 176; *see also* N.C. Gen. Stat. § 59-48(1); N.C. Gen. Stat. § 59-70. Additionally, the trial court should enter judgment, which is supported by the findings of fact and conclusions of law. *See id.* at 699, 567 S.E.2d at 176.

## VI. Conclusion

We conclude Devil Shoal is a general partnership within the meaning of the Uniform Partnership Act. We also conclude the trial court erred in its classification, valuation, and distribution of partnership assets and liabilities in connection with its wind up of Devil Shoal. Accordingly, we reverse and remand the matter to the trial court for its dissolution and wind up of Devil Shoal, pursuant to the Uniform Partnership Act and not inconsistent with this opinion.

REVERSED AND REMANDED.

Judges MURPHY and GRIFFIN concur.